12899

MORTGAGE LOAN COMPANY v. TOWNSEND *ET AL.*

(152 S. E., 878)

*Mr. H. L. Erckmann,* for appellant Townsend,

*Messrs. John I. Cosgrove* and *Logan & Grace,* for appellant Ficken,

*Messrs. Julian Mitchell* and *Ernest L. Visanska,* for respondents,

April 18, 1930.

The opinion of the Court was delivered by MR. JUSTICE BLEASE.

South Carolina Loan & Trust Company, a banking corporation in the City of Charleston (hereinafter referred to as the Trust Company), on December 13, 1926, had among

its assets a bond, the payment of which was secured by a real estate mortgage, executed by Thetis Realty Company, on which there was due, on the day named, as principal and interest, $12,914.79. On said day the Trust Company also owned and held a bond, the payment of which was secured by a mortgage of real estate, executed by Julia Huneken, and on which there was due that day, as principal and interest, the sum of $3,066.67. These papers are referred to later, respectively, as the Thetis and Huneken bonds. The total amount due on both bonds on December 13, 1926, was $15,981.46. On the day named, the appellant Dr. Townsend had on deposit with the trust company $16,426.69. On the same day, the appellant Ficken, the president of the Trust Company, for that corporation, assigned and transferred to Dr. Townsend the Thetis and Huneken bonds and mortgages, the consideration therefor being the check of Dr. Townsend on the Trust Company for the sum of $15,981.46, the amount then owing to the trust company on the bonds, and the deposit account of Dr. Townsend was charged with the amount of the check. On December 16, 1926, three days after the assignments to Dr. Townsend, the Trust Company, being insolvent, closed its doors, and thereafter A. S. Fant, the State Bank Examiner, was appointed its Receiver by an order of the Court of Common Pleas for Charleston County. A little later, the respondent here, the Mortgage Loan Company, a corporation organized for the special purpose of liquidating to some extent the affairs of the Trust Company, by an order of the same Court was empowered to take over certain assets of the Trust Company and to administer and liquidate them for the benefit of the parties entitled thereto, including particularly the depositors of the institution.

In addition to reciting what now seems to be those undisputed facts, mentioned above, the respondent here, the Mortgage Loan Company, charged in the first cause of action of its complaint that the Trust Company was insolvent on De-

cember 13, 1926, and was then on the verge of closing its doors, and that the assignments of the Thetis and Huneken bonds and mortgages to the appellant Townsend by the appellant Ficken were fraudulent, wrongful, unlawful, and an attempt to prefer Dr. Townsend as a depositor of the Trust Company over the other depositors of that institution. That cause of action looked to a *rescission* or *cancellation* of the assignments of the bonds and mortgages to Dr. Townsend, and a restoration of them to the respondent for the benefit of the creditors and depositors of the Trust Company.

The second cause of action set up by the respondent alleged the facts disputed and undisputed, which we have referred to, and charged further certain damages sustained by the respondent on account of the alleged fraudulent conduct of the appellants, and sought a recovery on that account of the sum of $5,000.

The appellants filed separate answers, denying any wrongful or fraudulent conduct on their part, and alleged that the assignments of the securities were *bona fide,* and disputed respondent's claim to their recovery and the damages it demanded.

The cause was heard by Hon. W. H. Townsend, Circuit Judge, presiding in the Court of Common Pleas for Charleston County, who heard the evidence in open Court.

The Circuit Judge came to the conclusion that there was fraud in the transactions surrounding the assignments of the bonds and mortgages, and that Dr. Townsend had been given an unlawful preference as to his deposit. The effect of his conclusion was to hold preferential the assignments. He rendered judgment in favor of the respondent against both Dr. Townsend and Ficken for the sum of $17,619.16, which amount included the face value of the securities on December 13, 1926, when they were assigned, and interest on that amount from that date to the date of the order, June 1, 1928. The order will be reported, for it states fairly, in our opinion, many of the facts of the cause to which we

have not referred, and sets forth clearly some reasons of the Circuit Judge for the judgment he rendered. From that order Dr. Townsend and Ficken appealed.

We heard the cause at our October, 1929, term, and, in a short opinion affirmed the judgment of the lower Court.

Thereafter, on petition for rehearing on the part of the appellants, we made an order modifying considerably the judgment we first rendered. The effect of our conclusion at that time was to require Dr. Townsend to deliver up the bonds and mortgages to the respondent, so that the respondent might proceed to collect the amounts due thereon for the benefit of the creditors of the Trust Company, and to reverse that portion of the Circuit Judge's decree which allowed judgment against the appellants in favor of the respondent for the sum of $17,619.16.

Upon the filing of the order last mentioned, the respondent filed a petition for a rehearing, earnestly insisting therein that our first conclusion had been absolutely correct, that the modification thereof should not have been made, and especially urged that it be allowed to present again its contentions in the case. In view of the fact that our per curiam order of modification had been made upon the petition of the appellants for a rehearing, accompanied by a strong argument in its favor, and without opportunity to the respondent to reply to that argument, we decided that it would be fair to all the parties to order an entire rehearing of the case. Accordingly, the appeal came before our Court at the March, 1930, term. We have considered it best to withdraw both the opinions heretofore filed, above referred to, and to substitute this opinion for them.

The exceptions total thirty-nine, twenty on the part of Townsend and nineteen by Ficken. They present, according to the grouping of them by counsel for the appellants, eight questions. We think, however, that even fewer questions are really involved, and that proper answers to them will determine everything in the case necessary to be passed upon.

The first question for consideration is this: Did the respondent, as assignee of the Trust Company, have the right to bring, and does it now have the right to maintain, this action? For the reasons stated by him in his decree, and upon the authorities therein cited, we are of opinion that the Circuit Judge correctly held against the contention of the appellants as to this matter. Aside from that, however, we have practically decided that question by our decision in *Lee v. Allan et al. (Ex Parte Fant, Receiver, et al.)*, 147 S. C., 167, 145 S. E., 34. That cause involved the relationship of the respondent, the Mortgage Loan Company, to the affairs of the Trust Company: It was pointed out very clearly in the opinion of this Court, written by Mr. Justice Cothran, that the respondent was then acting under the order of the Court of Common Pleas for Charleston County for the benefit of the creditors and depositors of the Trust Company. Certain assets and rights of the Trust Company, under the approval of the Court, passed to the respondent for the purpose of their proper liquidation in the interest of the creditors and depositors of the Trust Company. We are still satisfied with our conclusion in the *Lee case,* and regard it as being conclusive of the question here considered.

The second question for our determination relates to the holdings of the Circuit Judge to the effect that the assignments were unlawful and preferential. The appellants urge that there was no proof of the insolvency of the bank at the time these were made; that Dr. Townsend was innocent in the transaction; that he was a purchaser in good faith; and that there was no unlawful preference in his favor. The Circuit Judge, on the facts before him, has decided all these matters adversely to the contentions of the appellants, and we adhere to the conclusion which we have twice reached, that his findings should not be disturbed.

It is strongly contended, however, by the appellants that the facts in the case of *Harlem Corporation v. Eadie,* 152 S. C., 242, 149 S. E., 401, decided by this Court since this

cause was heard on circuit, are so much identical with the facts of this case as to demand a reversal of the conclusion of the Circuit Judge under the authority of the *Harlem case.*

The *Harlem case* involved the assignment of certain securities to Mrs. Hibbet by Ficken, as president of the Trust Company, at about the same time of the assignments to Dr. Townsend. That cause was also heard by Circuit Judge Townsend, but on exceptions to the report of Master F. K. Myers, who first heard the case and decided in favor of the validity of the assignment to Mrs. Hibbet. The Circuit Judge reversed the conclusion of the Master, but on appeal we sustained the Master and reversed the Circuit Judge.

The *Harlem case* was a close one—so close that the decision in favor of Mrs. Hibbet was by a bare majority of the Court. That majority were influenced by some things we thought favorable to her, which do not appear here in the interest of Dr. Townsend. The Master, who heard the testimony and saw the witnesses, an opportunity not given to the Circuit Judge, was certain of the validity of the assignment to Mrs. Hibbet, and his decision influenced very much the majority of the members of this Court. In this cause the Circuit Judge saw the witnesses, and was in position to observe their bearing and pass upon their credibility.

Certain outstanding facts inured to the benefit of Mrs. Hibbet, while other facts outstanding as much are unfortunate for Dr. Townsend. When the closing of the doors of the Trust Company was rapidly approaching, Mrs. Hibbet was far away from the scene, being at her home in Tennessee, while Dr. Townsend was close by, less than full three days before the actual closing, being in the home of Ficken, the president of the institution, and there signing, at Ficken's instance, certain checks in blank for Ficken to use in making transfer of the securities. There was strong evidence also to show that Mrs. Hibbet had no desire to be a depositor of the Trust Company, but that she placed her funds with the institution, or really with Ficken, as her attorney, for the pur-

pose of having them invested in proper securities. She had continually insisted upon these investments being made, and finally her insistent demand was complied with. If Ficken, or the Trust Company, had carried out her instructions, she would not have been a depositor of the Trust Company to any extent at the time it was on the verge of breaking, for her money would have been invested in the class of securities she desired. On the other hand, Dr. Townsend had been for many years a continuous depositor to a large extent of the Trust Company, and only sought to withdraw his deposit at almost the last moment, and then only upon the advice of Ficken. Dr. Townsend may have been entirely innocent, but, as the Circuit Judge held, he placed himself in the position of making Ficken his absolute agent, and he must be bound by the acts of that agent. Mrs. Hibbet had absolutely no information or intimation, so far as the record in her case showed, of the failing condition of the bank, or anything else to make her suspicious that it was insolvent. Dr. Townsend knew, as he honestly and frankly testified, that Ficken was endeavoring to sell the entire banking institution. Again, Mrs. Hibbet was in no way related to Ficken, according to the evidence in her case, while Dr. Townsend and Mr. Ficken were closely associated and had married sisters. We think it is quite likely that Ficken was trying to save himself from the just criticism of Mrs. Hibbet that he had been derelict in his duty to her, while Ficken, because of his personal interest in Dr. Townsend, was attempting to save him serious loss.

In a cause in equity, it is incumbent upon the appellant to convince this Court that the findings of fact of the Circuit Judge were contrary to the evidence. We are not so convinced in this case. A majority of the Court was so convinced in the *Harlem case*.

The other matters in the appeal properly up for our consideration relate to the money judgment awarded the respondent against the two appellants. In the action he took,

it will be seen that the Circuit Judge, holding that the assignments to Dr. Townsend amounted to an unlawful preference in his favor, did not, however, direct the bonds and mortgages to be delivered to the respondent, but, in lieu of that course, he found in favor of the respondent against the appellants for the face value of the bonds and mortgages on the day of their assignment, and the accrued interest from that date to the date of his decree. To understand why a judgment of that nature was rendered, and to properly decide whether or not it was a correct one, it seems necessary to advert to some facts developed at the hearing of the cause, which were somewhat responsive to certain allegations contained in the answer of the appellant Dr. Townsend, of which facts we have not heretofore spoken.

On March 15, 1927, the real estate described in the mortgage of Thetis Realty Company, which mortgage had been assigned to Dr. Townsend, was conveyed to him in fee-simple by that corporation, and the deed of conveyance was duly entered of record on the 21st day of March. The consideration of this deed was stated to be the sum of $10 "and other valuable considerations." The deed contained this covenant: "This conveyance being subject to the outstanding mortgage and liens on said property, the payment of which is assumed by the purchaser herein as consideration of this deed." Under the deed, the grantee, Dr. Townsend, went into possession of the property. We gather from the record there was no other incumbrance by way of mortgage on the premises. It seems that Dr. Townsend paid delinquent state and county taxes on the property for three years amounting to $359.02. Reference is made in the testimony to some paving assessments due the City of Charleston, but it is not clear to us who paid them. Dr. Townsend had collected no interest on this mortgage debt. The amount of rents and profits, if any, received by him from the premises, are not disclosed in the record. The only evidence as to the value of the Thetis property came from one witness, who testified that, in his opinion, it was worth about $8,000.

The Huneken bond and mortgage were still in the possession of Dr. Townsend, at the time of the hearing of the cause. This mortgage seems to have been the first lien on the premises, but, apparently, there was a second mortgage to the Trust Company, securing the payment of a bond for the principal sum of $400, and the interest thereon, and we assume that the papers constituting the second lien went into the possession of the respondent. We find no evidence tending to show the value of the premises covered by this mortgage.

The record seems to be altogether silent as to the ability of the two mortgagors, Thetis Realty Company and Julia F. Huneken, to respond to any judgment which might be obtained against either of them on the debts due by them on their respective bonds.

While he has not plainly so stated, we think the money judgment rendered by the Circuit Judge was so rendered for the reason that he felt it was impossible, or at least impracticable, for Dr. Townsend to restore the *status quo* as to the securities which had been assigned to him.

The exceptions of the appellants, together with the positions taken by the respondent in its efforts to uphold the money judgment awarded in its favor, raise some interesting questions, which we shall endeavor to pass upon without the necessity of stating the exceptions or respondent's positions in detail.

In determining the questions before us, we should not be unmindful of the fact that the Court of Equity has large and extensive powers in any cause properly coming within its jurisdiction. Where that Court has rightfully obtained jurisdiction in a cause to cancel a written instrument, it has, as it should have, the power to give complete relief. In the article on "Cancellation of Instruments" in Corpus Juris, speaking of the general powers of a Court of Equity in that regard, the writer, after stating, "it has been held that the Court may, in a proper case, award a

judgment for money, provided an indebtedness is established," goes on to lay down this general principle: "It may likewise, in a proper case, award an injunction, direct an accounting, order a sale of property, or order a partition of realty where it has obtained jurisdiction to cancel or to rescind a conveyance." 9 C. J., 1262.

In that connection, at page 1263, Id., this language is used: "Where the grantee has conveyed the property, or part of it, to another, or for other reason cannot restore it, plaintiff is entitled to a money judgment for damages, such relief being given on the principle that the Court, having obtained jurisdiction, will retain the case for the purpose of giving complete relief, and also for the purpose of avoiding a multiplicity of suits. It has been said that this relief is eminently proper under the reformed procedure, where the rights of the parties are settled and determined in one action, the distinctions between the actions at law and suits in equity having been abolished. The amount of recovery will of course vary according to the particular circumstances attending the case."

In the article on "equity," this is also, stated in Corpus Juris: "A decree for the payment of money, although also in the power of a law Court, is of course appropriate to equity in carrying out the policy of doing complete justice where once its jurisdiction has attached. Thus, as an incident to other relief properly cognizable in equity, the Court may retain jurisdiction and compel an accounting between the parties. Sometimes the Court will go beyond an accounting consequent upon the determination of the main equities involved, and will award moneys accruing somewhat collaterally but connected with such equities. So, under proper circumstances, the Court may retain jurisdiction until complete justice has been done by a sale of land and distribution of the proceeds." 21 C. J., 140.

As to the power of a Court of Equity to assess damages, we find the following in Corpus Juris: "Sometimes when

the Court has equitable jurisdiction, or takes and exercises equitable cognizance of a case because equitable relief is solely appropriate to the main issue or cause of complainant, it will retain the case and take an account of the damages growing out of or following from the wrong which is the basis of equitable relief. Thus where jurisdiction has been invoked to restrain the further commission of wrongful acts, damages already suffered will generally be awarded. But retention of jurisdiction to grant damages rests in the sound discretion of the Court. The damages which may be recovered in equity are compensatory and not exemplary damages, and such only as are ancillary or auxiliary to the main relief." 21 C. J., 141.

Some of our own cases are in harmony with those general principles, as will be seen from the following: In *Atlanta & Charlotte Air Line Ry. Co. v. Victor Mfg. Co.,* 79 S. C., 266, 60 S. E., 675, it was held that the Court of Common Pleas, in the exercise of its chancery powers, has jurisdiction to award compensatory damages when there has been a trespass. To the same effect is *Southern Railway Co. v. Gossett,* 79 S. C., 372, 60 S. E., 956.

In *Connor v. McCoy,* 83 S. C., 165, 65 S. E., 257, 261, the Court approved certain principles taken from the Encyclopedia of Pleading and Practice in this language: "Furthermore, it is distinctly characteristic of a Court of Equity that it may adapt its decree to all the varieties of cricumstances which may arise, and may vary, qualify, restrain, and model the remedy so as to suit it to the mutual and adverse claims, controlling equities, and the real and substantial rights of all the parties, and it is not only the right, but the duty, of the Court, when all the parties are before it, to adjust the rights of all, and have nothing open to litigation if it can be avoided."

In *Southeastern Life Insurance Co. v. Palmer,* 120 S. C., 490, 113 S. E., 310, it was decided that the Court of Equity has no jurisdiction in cases of tort, except by injunction.

While the question was not distinctly passed upon, the implication is contained in that decision that a Court of Equity may assess compensatory damages. See, also, the concurring opinion of Justice Hydrick in *Godfrey v. Lumber Co.,* 88 S. C., 132, 70 S. E., 396, and the authorities cited by him, which are in point: *Bird v. Railroad Co.,* 29 S. C. Eq., 8, Rich. Eq., 46, 64 Am. Dec., 739; 21 C. J., 142.

Under the authorities to which we have called attention, it is our opinion, and we so hold, that, if the respondent could not be placed in the possession of the bonds and mortgages, or put in position where it could rightfully proceed to recover thereon, then the Court could exercise its power to award a proper sum as compensatory damages against the appellant, Dr. Townsend, in favor of the respondent.

Following the conclusion which we have reached, the inquiry logically turns to ascertaining if the bonds and mortgages can be put in the possession of the respondent; and, failing in that, can the respondent be placed in position where it can proceed to make collection of these securities.

The record shows that the Huneken bond and mortgage are still in the possession of Dr. Townsend; presumably, there is nothing in the way of their delivery. Since the Court below has decided, and we have approved the decision, that the assignment of that bond and mortgage was wrongful and unlawful, it becomes the duty of Dr. Townsend to surrender the same to the respondent, and this, it appears, may be effected.

If, for any reason, the Huneken bond and mortgage cannot be delivered, as it should be, the respondent may yet proceed to the collection of the instruments, and, if necessary, bring the proper foreclosure suit on them, just as any mortgagee, or the proper assignee of a mortgage, may collect and sue upon a bond and mortgage, the originals of which have been unlawfully withheld, or concealed, or lost or destroyed. The Court, with its great power to require

the cancellation of written instruments, may direct that the assignment of the bond and mortgage, appearing on the record in the office of the register of mesne conveyances of Charleston County, be canceled and proper notation of the order of the Court to that effect be entered on the record.

Should it hereafter appear (it does not at this time) that any third party has come to possess any interest in the Huneken bond and mortgage, which would cause any loss to the respondent on these instruments, or if, for any reason, there is any loss, growing out of any act of Dr. Townsend, he, of course, would be liable therefor, and recovery thereof may be had in the manner we point out later. It may be well in this connection to add that Dr. Townsend is, of course, liable for any payments, either principal or interest, which may have been made on the Huneken papers, with interest thereon from the date of such payments to him.

From the arguments submitted in favor of the appellant Ficken and the respondent, it would appear on first thought that there is considerable difficulty as to what is the proper thing to do regarding the Thetis bond and mortgage on account of the deed to the mortgaged premises accepted by Dr. Townsend. The respondent takes the position that, when Dr. Townsend accepted the deed, and assumed, by his acceptance, the payment of the outstanding mortgages and liens, a merger resulted, for the reason that at the time of the acceptance of that deed Dr. Townsend then held the trust company mortgage. Respondent argues that these circumstances have made it impossible, and, at least, very doubtful, as to its ability to recover on the mortgage debt, because, in a suit to recover thereon, it is likely respondent will meet the contention that the mortgage has been satisfied. On the other hand, the appellant Ficken contends there was no merger, and that the Thetis bond and mortgage may be placed in the hands of the respondent.

In the answer filed by Dr. Townsend, he distinctly alleged that the Trust Company mortgage became merged in the

conveyance, which he accepted, that it was duly paid thereby, and was no longer of force and effect as a mortgage. In this connection, it is argued in behalf of Dr. Townsend that the Thetis property is probably not worth the amount of the debt evidenced by the Thetis bond and secured by a mortgage of the property, and, consequently, Dr. Townsend should not be held for the entire amount of the indebtedness, but only such amount as could really be collected on the papers.

We think that the difficulties mentioned concerning the Thetis bond and mortgage are more imaginary than real, and that they are not sufficient to demand a reversal of the holding of the Circuit Judge that the respondent was entitled to a money judgment against Dr. Townsend for the amount of the debt, evidenced and secured by those papers. Neither do we think it is at all necessary to discuss the question of merger. If there was no merger, as contended by the appellant Ficken, the mortgage debt remains open, and the respondent is entitled to collect the amount thereof. If there was a merger, as urged by the respondent and the appellant Dr. Townsend, and the resultant effect is to prevent the collection of the mortgage debt, then Dr. Townsend has placed the respondent where it cannot collect that debt, and, under the authorities which we have already cited, he is liable for the loss sustained by the respondent because of his conduct.

When Dr. Townsend accepted the deed to the Thetis property, he agreed with his grantor that he would pay the latter's debt due on the bond that it had executed to the Trust Company. That agreement was a part of the consideration of the deed. By it, the Thetis Realty Company was not legally discharged from its debt to the Trust Company; but the effect was, so far as Dr. Townsend and the Thetis Realty Company were concerned, to make Dr. Townsend primarily liable for the debt. He was bound to pay the debt to its rightful owner. The holder could look to him, under his contract, for the money. The contract was

not only for the benefit of the Thetis Realty Company, but it also inured to the benefit of any third party who had rights thereunder. If the debt afterward became due to Dr. Townsend himself, there would, of course, have been a settlement. But the debt did not at any time become the property of Dr. Townsend, for the reason that the attempted assignment to him was void *ab initio,* on account of of the legal fraud which tainted it. The rights of the depositors and creditors of the Trust Company were in and about the Thetis debt all the time. Those rights could not be interfered with, without the proper consent of their owners by the conduct of Dr. Townsend and the Thetis Realty Company. Not even merger will operate to the prejudice of third parties. 10 R. C. L., 668; 41 C. J., 688. The amount of the debt was established in the cause. It was past due. Dr. Townsend's assumption of its payment called for a judgment against him for that amount. The Court had the right to grant the judgment. See the quotation above from 9 C. J., 1262.

If Dr. Townsend had not assumed the payment of the debt, evidenced by the Thetis bond and secured by that mortgage, there might be considerable force in the position taken by his counsel that he should not be held liable for the full amount due on those instruments, for the reason that the mortgaged premises may not be worth the amount of the debt. The value of a bond, or promissory note for money, depends, not only on the amount of the indebtedness evidenced thereby, but upon the financial responsibility of the maker of the instrument and the security for its payment. It is easy to be seen, however, that the valuation of the Thetis real estate has, at this time, no bearing on the amount of the judgment to be awarded against Dr. Townsend, for the reason that he assumed the payment of the entire debt.

We should notice, perhaps, a position of the appellants, particularly Ficken, which we deem correct as to the law stated, although it is not applicable here, and, along with that position, one taken by the respondent

that we regard erroneous. Between the two opposing views, we think we find the right principle applicable to the cause, and which is in answer to the questions made by both parties. The appellants urge, and rightly so, in our opinion, that a plaintiff in an action in equity, as well as in one at law, has no right usually to recover upon a theory not supported in anywise by the allegations of his complaint. See *Brockington v. Lynch,* 119 S. C., 273, 112 S. E., 94, and authorities in point cited by Justice Cothran in his opinion. It is vigorously contended by the appellants that plaintiff's complaint sought only the rescission of the assignments, and that it contained no allegation looking to the recovery of money damages.

The respondent points to that part of the prayer of its complaint for general relief, and is of the opinion that under it it is entitled to recover any specific relief which the evidence warranted it to receive. In support of that position, it has cited us to several authorities. We shall not take the time to review all of these. We do consider, however, a quotation from 21 C. J., 679-682, where certain of our cases are noted as sustaining the principles adverted to : "A prayer for general relief is as broad as the equitable powers of the Court. Under it the Court will shape its decree according to the equities of the case, and broadly speaking *will grant any relief warranted by the allegations of the bill,* whether it is the only prayer in the bill or whether there is a special prayer for particular and different relief ; and defects in the special prayer. *If the facts alleged are broad enough to warrant relief, it matters not how narrow the specific prayer may be if the bill contains a prayer for general relief.* The prayer for general relief serves to aid and supplement the special prayer by expanding the special relief sought, so as to authorize further relief of the same nature. It may also serve as a substitute for the prayer for special relief and authorize relief of a different nature when that specially prayed is denied even to the extent of substituting a money decree in lieu of the relief specifically prayed." (Italics ours.)

We are inclined to believe that the respondent's counsel have fallen into their error by regarding too much the first sentence in the quoted language: "A prayer for general relief is as broad as the equitable powers of the Court." They should have looked more to the words we have italicized. The relief to be granted depends not upon that asked for in the prayer but it must be such as is warranted by some allegation contained in the pleadings.

While the prayer of the bill or answer, under the ancient equity pleading, was highly regarded, the tendency of our equity Courts, even before the adoption of the system of code pleading, was to disregard the prayer, when it was possible to do so, and to look more to substance than to form. Since the adoption of the code, that tendency has continued, until our Court has gone so far as to announce that the prayer of the complaint is no part thereof. *Balle v. Moseley,* 13 S. C., 439; *Williams v. Workman,* 113 S. C., 487, 101 S. E., 833. Also, in *First National Co. v. Strak,* 148 S. C., 410, 146 S. E., 240, it was declared that the character of an action is primarily determined by the allegations of the complaint. And very recently we have re-affirmed the well-recognized rule that the plaintiff need not characterize the facts stated in his pleading, or give his cause of action a name. *A. C. Lumber Corp. v. Morrison,* 152 S. C., 305, 149 S. E., 243.

The object of pleading has been declared to be to advise the parties of the issues involved in the cause. *Shelton v. Sou. Rwy. Co.,* 86 S. C., 98, 67 S. E., 899. Chief Justice Willard said, in *Mason v. Carter,* 8 S. C., 103: " * * * When a fact is pleaded, whatever inferences of law or conclusions of fact may properly arise from it are to be regarded as embraced in such averment." Our cases, since the adoption of the code, have repeatedly announced that pleadings will always be liberally construed. As far back as 1841, the great Chancellor Harper declared: "The same strictness of plead-

ing and proof, certainly does not obtain in this Court (the Court of Equity) as in the Courts of law."

What may be termed the "middle ground" between the respective views of the parties to this cause is our view, and we deem it altogether applicable in this instance. That view is that in this equitable cause it was the duty of the Court to consider all the pleadings before it—not only the complaint of the respondent but the answers of the two defendants. Some of our cases cited by the respondent in support of its too extreme position do not support it, but sustain our view. In *Barr v. Haseldon,* 31 S. C. Eq. (10 Rich. Eq.), 53, Chancellor Wardlaw, speaking for the Court, quoted with approval what he had formerly said in *Nix v. Harley,* 24 S. C. Eq. (3 Rich. Eq.), 379, as follows: "The remedy to be afforded in a cause in equity depends upon *the whole pleadings of the cause.* The case stated by a plaintiff may be so varied by the answer of defendant or the proofs, that a plaintiff may be barred from the special remedy he seeks, yet under the prayer for general relief the Court will afford such remedy as is proper under all the circumstances of the case." (Emphasis ours.)

It is true that, in the first cause of action of its complaint, the respondent may have sought only the rescission of the assignments of the bonds and mortgages, which were the subject-matters of the litigation. It alleged, though, that the total amount due on both of the bonds on December 13, 1926, the day of the attempted assignment of them, was $15,-981.46, and it charged that the assignments were unlawful and wrongful, and that the instruments should be delivered to the respondent. The appellant, Dr. Townsend, however, in his answer, came to the assistance of the respondent, and aided it by placing before the Court allegations as to certain material occurrences conected with the bond and mortgage of Thetis Realty Company, the possession of which the respondent was seeking. Dr. Townsend alleged that he owned that bond and mortgage, "and in consideration of his assum-

ing the payment of the mortgage liens thereon he received from Thetis Realty Company, the owner of the mortgaged property a deed to same * * * and that by said conveyance the said mortgage became merged in the said conveyance and was duly paid thereby and is no longer in force and effect as a mortgage, it having been duly paid by the execution of said deed." He said, in effect, to the Court, in·his answer that he had the Thetis bond and mortgage; that he could not deliver the same; that his title to the papers was good; and that he owned the premises covered by the mortgage. The Court had to pass upon the facts he alleged. The trial Judge did pass upon them, and agreed very much that Dr. Townsend was correct. The matters had become so entangled that the Court very properly decided that about the best thing to be done, under all the circumstances, was to let Dr. Townsend keep the premises and his bond and mortgage, and pay to the respondent the amount he had agreed to pay on the bond and mortgage, the payment of which he had assumed.

It will be observed that we have been considering mostly the relationship of the appellant Dr. Townsend, to the respondent, and have expressed our views so far mainly as to the judgment awarded against him by the presiding Judge. The appellant Ficken raises some questions which apply to him alone. As we understand the argument of his counsel, it is contended, first, that the suit, so far as Ficken was concerned, was an action at law, and that appellant was entitled to a jury trial as to the amount of damages, if any, to be assessed against him. We are not able to adopt this view. The complaint of the respondent set up, as already stated, in the first cause of action, allegations appropriate to an action for the rescission or cancellation of certain written instruments—a matter cognizable by a Court of Equity.

The second cause of action related all the matters set forth in the first cause of action, and alleged only, in addition thereto, that the appellants, by their

wrongful and fraudulent conduct, had compelled the proceedings to be instituted for the recovery of the bonds and mortgages, to the respondent's damage in the sum of $5,000. That cause of action may have contained some language properly appropriate to an action in tort. The appellant Ficken himself has called attention of this Court to the fact that the trial Judge ignored the second cause of action, in his decree, and there has been no appeal by the respondent from the action he took. We think the presiding Judge properly refused to consider the second cause of action in making his decree. As shown already, by some authorities we have cited, while the respondent was entitled to compensatory ·damages, it is very clear that a Court of Equity has no jurisdiction in tort and cannot award punitive damages. See, also, *Bratton v. Catawba Power Co.,* 80 S. C., 260, 60 S. E., 673; *Welborn v. Dixon,* 70 S. C., 108, 49 S. E., 232, 3 Ann. Cas., 407. The Judge has not awarded any punitive damages against either of the appellants. It may be, and we are also inclined to so think, that the presiding Judge, if he did not consider the second cause of action as one on tort, he then regarded it as one for actual damages in addition to the value of the bonds; and that he came to the conclusion, very properly, that he could not award more than the compensatory damages to which the respondent was entitled, and that such damages included only the value of the instruments involved in the suit. Whichever view he took, neither of the appellants has suffered any harm, and we do not see how either of them can complain thereabout. If the respondent should seek hereafter in this action anything other than compensatory damages, we think not only Ficken, but his co-appellant, may rightly demand trial by jury on that issue.

The second position in the interest of the appellant Ficken alone is that there should not have been at this time, if at all, any judgment against him for compensatory damages. We are of the opinion that that conten-

tion is correct, and we so held in our per curiam order on the petition for rehearing. Ficken was not in possession of the bonds and mortgages at the time the suit was instituted, and he has made no claim at any time to any right, title, or interest therein. We assume he was brought into the suit because he had been for some little time in possession of the written instruments, and the respondent may not have been advised at the time of the institution of the suit whether Dr. Townsend or Ficken was then in the possession of the papers. Whoever had them should, of course, have surrendered them to the Court or to the respondent, upon the Court's order, if rescission was directed.

Neither was Ficken liable at the time of the Judge's decree for any compensatory damages. The bonds and mortgages were admittedly in the hands of Dr. Townsend at that time, and he alone of the two appellants contended that he had any interest in them. Ficken was not in position to deliver up the papers, and he was not responsible to the respondent for their value ahead of Dr. Townsend.

What we have said as to the liability of Ficken does not necessarily mean that he may not hereafter be properly held for compensatory damages on account of his transactions pertaining to the assignments of the bonds and mortgages. The respondent, as we have already found, is entitled to its judgment against Dr. Townsend for the amount due on the Thetis bond and mortgage, because Dr. Townsend was in the possession of these papers and assumed their payment. And the respondent, under our judgment, is to be given possession of the Huneken bond and mortgage. Ficken should not be held liable unless it is shown that the respondent has sustained some loss other than that which now appears.

Referring to the proper method by which the respondent may proceed to procure such compensatory damages as it may be entitled to have, for losses sustained by it, and recurring, in that connection, somewhat to the question as to jury trial, we think it well for the guidance

of the lower Court to give expression to our views. As indicated before, if the respondent, after making proper efforts, cannot recover the amounts due to it on both the Thetis and Huneken bonds, or either of them, not only Dr. Townsend but Ficken may be liable for any losses resulting to the respondent. These matters, as we see them, will have to be considered later, and at this time it is not proper for us to indicate whether or not there has been, or will be, any loss. We simply point out what we conceive the proper procedure.

In *State v. Gibbes*, 109 S. C., 135, 95 S. E., 346, it was held that Article 1, § 25, of the Constitution of 1895, providing that the right of trial by jury shall be preserved inviolate, preserves the right only in those cases in which the parties were entitled to it, under the law or practice existing at the adoption of the Constitution. Following the decision in that case, we seek to ascertain what was the proper method to assess compensatory damages, already allowed by the Circuit Judge, as well as such damages as may be demanded by the respondent later on. We think the proper method was clearly announced by Chancellor Dunkin in *Bird v. Railroad Co.*, 29 S. C. Eq. (8 Rich. Eq.), 46, 64 Am. Dec., 739. There, the Court approved what Mr. Justice Story said in his Equity Jurisprudence (Vol. 2, § 795) as follows: " 'The mode by which such compensation or damages is ascertained in such cases, is either by a reference to the Master, or by directing an issue *quantum damnificatus,* which is tried by a jury. The latter,' he says, 'was almost the invariable course in former times, in all cases where the compensation was not extremely clear, as to its elements and amount; and is still commonly resorted to in cases of a complicated nature. But the same inquiries may be had before a Master; and, in cases where such inquiries do not involve much complexity of facts or amounts, this course is often now adopted.' "

It will be seen that, under the former practice, the presiding Judge, acting as the chancellor in the matter of assess-

ment of compensatory damages, could have referred the issue to the Master, or, if he thought best, could have submitted it to a jury. Under the present practice, of course, the Judge may also, in addition to the two modes mentioned, hear the testimony and pass himself upon the issues. The whole matter is within his discretion.

The judgment of this Court is that the decree of the Circuit Judge be modified according to the views we have expressed herein, and that the cause be remanded to the Court of Common Pleas for Charleston County for the purpose of carrying out the decree as modified.

MR. CHIEF JUSTICE WATTS and MESSRS. JUSTICES COTHRAN and CARTER concur

MR. JUSTICE STABLER concurs in result.