THIS OPINION
 HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN
 ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
 Jack H. Biel
 and Biel &
 Clark, P.A., Respondents,
 v.
 William C.
 Clark and Clark &
 Stevens, P.A., Appellants.
 
 
 

Appeal From Beaufort County
 Edward D. Buckley, Jr., Special Referee

Unpublished Opinion No. 2008-UP-285
Heard May 7, 2008  Filed June 4, 2008
Withdrawn, Substituted and Refiled
September 23, 2008

AFFIRMED

 
 
 
 Attorney Robert L. Widener, of Columbia, for Appellants.
 Attorney Drew A. Laughlin, of Hilton Head Island, for Respondents.
 
 
 

PER CURIAM:  In this action arising out of the dissolution of a law
 practice, William C. Clark (Clark) and Clark & Stevens, P.A. appeal the
 special referees finding that contingency fee cases were an asset of the firm
 subject to distribution in accordance with the parties respective ownership
 interests.  Clark further asserts the special referee erred in finding unjust
 enrichment and in granting relief that exceeded the relief requested by
 plaintiffs.  We affirm.
FACTS
Jack
 H. Biel (Biel) and Clark practiced law together as a professional association
 organized as a professional corporation under the name Biel & Clark, P.A.
 (the Firm).  Clark joined the Firm in 1988 and became an equal shareholder
 sometime in late 1989 or early 1990.  During the twelve year duration of the
 Firms practice, Biel primarily handled real estate, probate, estate planning,
 and business matters, while Clark handled litigation and domestic matters.  Biel and Clark shared equally in the profits and expenses of all legal matters handled by
 the Firm, regardless of the originating attorney or the working attorney.  
Biel and Clark mutually agreed to cease practicing law
 together as Biel & Clark, P.A., effective December 31, 2000.  There was no written agreement governing the termination of the Firms practice.  The
 professional association remains in existence and has been in the process of
 winding up since the mutual agreement to cease practicing law together.  
At
 the time the Firm concluded its operations, Clark was handling several
 significant cases that he retained and continued to manage at his new firm.   
 Among these cases are three contingency fee cases that are the subject of the
 present litigation: (1) McKinley; (2) Southwind II; and (3) Ocean Palms.  The
 McKinley case is a personal injury matter involving Grant McKinley, a longtime
 friend and client of Biel.  The Southwind II and Ocean Palms cases are complex
 construction matters involving condominium and timeshare projects.  There was
 no agreement between Biel and Clark regarding attorneys fees that might be
 earned on these cases.  
Due
 to his personal relationship with Grant McKinley and his prior legal work for
 the Southwind II property owners association, Biel played a significant role
 in procuring the McKinley and Southwind II cases for the Firm.  
With
 regard to the McKinley case, Clark worked a total of 52.7 hours and collected a
 fee of $50,000.00.  Of that time, 17.8 hours were expended prior to December 31, 2000.  Prior to that date, the Firm advanced $1,233.33 for costs.  When the
 case settled, Clark tendered $5,000.00 to Biel as a finders fee. 
With
 regard to the Southwind II matter, Clark worked a total of 95.75 hours and
 received a fee of $203,291.91.[1] 
 Of the 95.75 hours, Clark worked a total of 16.75 hours prior to December 31, 2000, and the Firm advanced a total of $393.04 for costs.  A settlement
 statement dated March 1, 2002, and signed by the president of Southwind IIs
 governing body shows [t]otal expenses for Biel & Clark, P.A. of $550.21. 
 Clarks time and expense records show that those expenses were incurred after December 31, 2000; however, they are attributed to the Firm on the settlement statement. 
 The balance of the fee was retained by Clark and Stevens, P.A..[2]
As
 to Ocean Palms, this case was procured by Clark.  Prior to December 31, 2000,
 the work performed by the Firm for Ocean Palms was billed on an hourly basis
 and the fees earned and billed on that basis were collected and distributed
 equally between Biel and Clark.  In September of 2001, Clark entered into a
 contingency fee agreement with Ocean Palms.    At the time of the hearing
 before the special referee, portions of the Ocean Palms case had settled and a
 fee of $275,000.00 had been collected.  Other portions of the case were pending
 settlement at the time of the hearing.
Prior
 to December 31, 2000, the clients in the McKinley, Southwind II, and Ocean
 Palms cases did not receive written notification that Biel and Clark were
 ceasing to practice law together or that the Firm was going to cease
 operations.  The Firm appears as counsel for the plaintiffs in pleadings filed
 in all of these cases both before and after December 31, 2000.  Clark took no steps to see that the Firm was relieved as counsel in any of the disputed
 cases.  
On February 19, 2001, and March 19, 2001, Biel wrote Clark setting forth his understanding
 that the fees generated by the McKinley case would be split equally between the
 two attorneys.  In his letter, Biel also set forth his understanding that the
 fees generated by the Southwind II and Ocean Palms cases would be paid 50% to
 the Mullen firm, with the remaining balance shared equally between Biel and Clark.  Biel further invited Clark to advise him if his understanding differed
 from Biels.  Biel received no response from Clark until he settled the McKinley
 case more than one year later and tendered the $5,000.00 finders fee to Biel.  
On February 3, 2006, a hearing was held on the matter.[3] 
 Biel alleged causes of action for dissolution of the Firm, breach of
 contract, breach of fiduciary duty, unjust enrichment, and an accounting. 
 Specifically, Biel sought dissolution of the Firm and a distribution of 50% of
 the fees generated by the above-mentioned cases.  In an amended order dated February 28, 2006, the special referee held that the disputed fees were assets of the Firm
 to be distributed in accordance with the parties relative ownership
 interests.  The special referee rejected Biels breach of contract claim
 concluding that plaintiffs failed to prove the existence of a contract
 pertaining to the disputed fees or its breach.  As an alternative holding, the special
 referee accepted Biels unjust enrichment claim, finding that Biel had a
 reasonable expectation of payment from the contingency cases; that Clark should
 have reasonably expected to pay Biel; and that society would reasonably expect
 payment to Biel under these circumstances.  Based on these findings, the
 special referee ordered Clark to pay 25% of the fees generated by the Southwind
 II matter and 25% of the fees generated and to be generated by the Ocean Palms
 matter to Biel.  This allocation recognized that the Mullen firm was to receive
 or had received 50% of the fees from these cases.  On August 7, 2006, the special referee further ordered that the fees generated by the Ocean Palms matter
 after the issuance of the February 28, 2006, order shall be paid to the Firm
 and that the Firm be reimbursed for all expenses incurred in prosecuting the
 matter.  This appeal followed.
STANDARD OF REVIEW
This
 case involves both actions in law and in equity.  When legal and equitable
 actions are maintained in one suit, each retains its own identity as legal or
 equitable for purposes of the applicable standard of review on appeal.  Corley
 v. Ott, 326 S.C. 89, 92, 485 S.E.2d 97, 99 n. 1 (1997) (citing Future Group
 v. Nationsbank, 324 S.C. 89, 478 S.E.2d 45 (1996)).
In an
 action at law, on appeal of a case tried without a jury, the findings of fact
 of the judge will not be disturbed upon appeal unless found to be without
 evidence which reasonably supports the judges findings . . . . The judges
 findings are equivalent to a jurys findings in a law action.  Townes
 Assoc., Ltd. v. Cty of Greenville, 266 S.C. 81, 86, 221 S.E.2d 773, 775
 (1976).  A special referee, under Rule 53(c), SCRCP, shall exercise all power
 and authority which a circuit [court] sitting without a jury would have in a
 similar matter.  Accordingly, our review of a special referees decision is
 limited to the correction of errors of law.  Id. at 85, 221 S.E.2d at
 775.
A
 corporate dissolution is an action at equity.  Jordan v. Holt,
 362 S.C. 201, 205, 608 S.E.2d 129, 131 (2005).  In actions at equity, this
 court can find facts in accordance with its own view of the preponderance of
 the evidence.  Id.
LAW/ANALYSIS
Clark argues the
 special referee erred in finding the contingency fee cases were assets of the
 Firm subject to marshalling and distribution through the dissolution of the
 Firm.  Specifically, Clark contends the contingency cases and fees are not
 assets of the firm because all three cases were transferred to him after the
 break-up of the Firm.[4] 
 He further asserts the referee erred because Biel did not allege the cases and
 fees were assets of the Firm in their complaint.  We disagree.
As
 an initial matter, we note Clark failed to cite supporting authority for the primary
 arguments asserted in his brief on appeal.  However, to the extent appellant
 asserts the lack of any South Carolina authority regarding the primary issues
 raised, we proceed to review the arguments asserted.
The
 disposition of attorneys fees upon the dissolution of a law firm organized as
 a professional corporation in the absence of an agreement governing the
 dissolution is an issue of first impression in South Carolina.  Cognizant of
 the reciprocal and continuing obligations of former law partners, a majority of
 courts apply the principles of partnership law to professional corporations
 where withdrawal of attorney-shareholders results in the dissolution of the
 corporate entity.  See, e.g., Boyd, Payne, Gates, & Farthing,
 P.C. v. Payne, Gates, Farthing & Radd, P.C., 422 S.E.2d 784, 789-90 (Va.
 1992); Fox v. Abrams, 163 Cal. App. 3d 610, 616-17 (1985); Breaking
 Up Is Hard To Do: Allocating Fees From the unfinished Business Of A
 Professional Corporation, 64 U. Chi., L. Rev. 1367, 1368-79 (Fall 1997).   
Under
 the principles of partnership law as codified in the Uniform Partnership Act
 (UPA), all partners, upon dissolution, have a fiduciary duty to wind up the
 unfinished business of the partnership and to divide the resulting fees based
 upon each partners interest in the former partnership.  S.C. Code Ann. §
 33-41-370 (2006).  Likewise, courts applying a partnership analysis to allocate
 fees from the unfinished business of a law firm organized as a professional
 corporation find work in progress at the time of dissolution an asset of the
 firm in which the partners of the former firm have a fiduciary duty to
 complete.  See, e.g., First Union Natl Bank of Maryland v. Meyer,
 Faller, Weisman & Rosenberg, 723 A.2d 899, 905-07 (Md. App. 1999); Marr v. Langhoff, 589 A.2d 470, 475-77 (Md. 1991); Resnick v. Kaplan,
 434 A.2d 582, 586-88 (Md. App. 1981).  In determining allocation of fees in
 this context, these courts hold the distribution of fees resulting from
 completion of work in progress, absent special agreement, be allocated
 according to each partners interest in the profits of the dissolved firm.  See,
 e.g., Sufrin v. Hosier, 896 F.Supp. 766, 768-69 (N.D.ILL. 1995); Boyd, Payne, Gates, & Farthing, P.C., 422 S.E.2d at 789-90; Sullivan,
 Bodney & Hammond v. Bodney, 820 P.2d 1248, 1250-51 (Kan. App. 1991); Fox,
 163 Cal. App. 3d 610, 616-17.
In
 the case at hand, the Firm was organized as a professional corporation
 controlled by two attorney-shareholders, Biel and Clark. Consistent with the
 majority approach stated above, application of a partnership analysis is
 appropriate where the withdrawal of the attorney-shareholders results in the
 dissolution of the corporate entity.  Here, it is undisputed that the
 withdrawal of Biel and Clark from the Firm resulted in the dissolution of the
 partners professional corporation.  Thus, the work in progress associated with
 the three contingency fee cases constituted unfinished business in which Biel and Clark had a fiduciary duty to complete.  As such, the resulting fees generated by
 the completion of these three cases during the winding up process are deemed
 assets of the Firm subject to distribution based upon Biel and Clarks ownership interest in the profits of the Firm.  Therefore, based upon our review of
 the record, we find the fees generated from the three contingency fee cases in
 dispute are assets of the Firm subject to marshalling and distribution between Biel and Clark.  Accordingly, we affirm the manner in which the special referee determined
 the allocation of the fees and expenses.
Because we affirm
 the decision of the special referee as to dissolution and distribution of fees,
 we need not reach the special referees alternative holding regarding unjust
 enrichment.  See Futch v. McAllister Towing of Georgetown, Inc.,
 335 S.C. 598, 518 S.E.2d 591 (1999) (holding an appellate court need not review
 remaining issues when its determination of a prior issue is dispositive of the
 appeal); see also Weeks v. McMillan, 291 S.C. 287, 292,
 353 S.E.2d 289, 292 (Ct. App. 1987) (Where a decision is based on alternative
 grounds, either of which independent of the other is sufficient to support it,
 the decision will not be reversed even if one of the grounds is erroneous.).   
Finally, Clark argues
 the special referee erred in granting relief that exceeded the relief requested
 by Biel.  We disagree.
Our
 supreme court has held that where the facts alleged are broad enough to
 warrant relief, it matters not how narrow the specific prayer may be if the
 bill contains a prayer for general relief.  McMaster v. Strickland, 322
 S.C. 451, 454, 472 S.E.2d 623, 625 (1996) (citing Mortgage Loan Co. v.
 Townsend, 156 S.C. 203, 152 S.E. 878 (1930)).  In addition to a prayer for
 dissolution and winding up of the Firms business and affairs, Biels complaint also contains a prayer for general relief.  Furthermore, the factual
 allegations of the complaint regarding dissolution of the Firm support the
 special referees division of fees in this manner.  Thus, we find the relief
 granted was appropriate. 
CONCLUSION
For the foregoing
 reasons, the order of the special referee is 
AFFIRMED.
WILLIAMS, THOMAS,
and PIEPER, JJ., concur.

[1] The fee for Southwind II was split between Clark and
 the Mullen firm, which was associated by Clark and/or the Firm to assist in
handling the case.  The $203,291.91 reflects the amount received by Clark after paying 50% of the fee to the Mullen firm. 
[2] The balance retained reflects the amount of the fee
received after paying the Mullen firms fees and expenses.  
[3] None of the clients in the three cases at issue
testified at the hearing.  
[4] We find it essential to note that pursuant to Rule
 1.16 of the Rules of Professional Conduct, the right to discharge a lawyer at
 any time, with or without cause, lies solely with the client.  As such, any
 indication that the clients in these matters did in fact discharge the Firm
 from representation would significantly impact the decision in this case. 
 However, the record is deficient of any writing, testimony, or other evidence from
 the client to show the clients intent in these three cases.  Thus, absent a
 showing that the clients directed otherwise, we cannot find error based on this
 allegation.