[No. B002553. Second Dist., Div. Five. Jan. 14, 1985.]

HARRY F. FOX, Plaintiff and Respondent, v.
MARTIN L. ABRAMS et al., Defendants and Appellants.

MARTIN L. ABRAMS et al.,
Plaintiffs, Cross-complainants and Appellants, v.
FOX & GIBSON et al., Defendants, Cross-defendants and Respondents.

HARRY D. FOX et al., Plaintiffs and Respondents, v.
MARTIN L. ABRAMS et al., Defendants and Appellants.

## COUNSEL

Albert E. Levy and Michael A. Kaufman for Defendants and Appellants and Plaintiffs, Cross-complainants and Appellants.

Kinsella, Boesch, Fujikawa & Towle, Dale F. Kinsella and Catherine H. Coleman for Plaintiffs and Respondents and Defendants, Cross-defendants and Respondents.

## OPINION

**ASHBY, J.**—Martin L. Abrams, individually (Abrams), and Martin L. Abrams, a law corporation (appellant), appeal from a judgment in favor of respondents Harry D. Fox, James Gibson, E. Clarke Moseley and Fox & Gibson, a law corporation. These consolidated actions arise from the bitter breakup of the parties' law practice.

In 1976 the parties were practicing law together in El Monte as Abrams, Fox, Gibson & O'Rourke, a law corporation (AFGO).[1] The shareholders had a written agreement referred to at trial as the "Buy-Sell Agreement."

Relations between the parties broke down, and on May 6, 1976, Fox resigned from the firm. On June 1, 1976, Gibson also resigned and joined Fox in the practice of law a few blocks away. Moseley was then elevated to shareholder and on July 14, 1976, he entered a similar buy-sell agreement with Abrams, but on July 19 Moseley resigned and thereafter joined practice with Fox and Gibson, under the name of Fox & Gibson, a law corporation.

Prior to the resignations, respondents had been actively working on a number of AFGO's pending cases, mostly personal injury and wrongful death. After the resignations, 70 of the clients executed substitutions of attorney, substituting out AFGO and substituting in Fox & Gibson, a law corporation. Clients involved in other matters which had been pending with AFGO continued to employ Abrams as their attorney. Abrams' firm changed its name to Martin L. Abrams, a law corporation.

The numerous complaints and cross-complaints in this litigation primarily concern the parties' rights and obligations in the fees subsequently received for the cases which were in process on the dates of the resignations.

■ Respondents' theory, successful below, was that under the terms of the buy-sell agreements respondents were entitled to their percentage (reflective of their former ownership interests in the shares of stock) of all fees subsequently received by appellant for work in process as of the resignations, but that appellant had no similar interest in fees subsequently received by respondents for the cases which respondents took with them to their new law practice; rather, that appellant was entitled only to quantum meruit for the reasonable value of any services which may have been performed on those cases prior to the resignations, pursuant to *Fracasse* v. *Brent* (1972) 6 Cal.3d 784, 791 [100 Cal.Rptr. 385, 494 P.2d 9], the formula used in determining a discharged attorney's recovery against his former client.

Based on this assumption, the trial court, as a discovery sanction, struck appellant's answers and affirmative defenses to respondents' complaint and dismissed numerous causes of action in appellant's complaints and cross-complaints after appellant repeatedly declined to answer respondents' inter-

---

[1]Of the 240 shares of stock in the law corporation, Abrams owned 105, Fox owned 105, Gibson owned 24, and O'Rourke, who is not a party to this litigation, owned 6. Moseley was at that time employed as an associate.

rogatories requesting to know the number of hours spent on the cases, and a detailed description of the services performed.[2]

The result was to convert the trial on these causes to a default proveup, with appellant's liability established as a matter of law. The court awarded a judgment totaling over $138,000 against appellant and Abrams.[3]

We hold that the judgment must be reversed because the theories supporting the judgment and the discovery sanctions are erroneous. The *Fracasse* v. *Brent* test on which the discovery motions were based deals with the relations between a discharged attorney and the former client, and has nothing to do with how the fee should be allocated among the lawyers who formerly practiced together. The buy-sell agreements were erroneously interpreted in a one-sided manner which favored respondents over appellant based on a distinction exalting form over substance concerning who "left" and who "stayed" in the course of the breakup of the firm.

The recent case of *Jewel* v. *Boxer* (1984) 156 Cal.App.3d 171 [203 Cal.Rptr. 13], shows the proper way to resolve the instant dispute. In that case four attorneys, Jewel, Boxer, Elkind, and Leary, practiced law together in a partnership. They dissolved the partnership and formed two new firms, Jewel & Leary, and Boxer & Elkind. Each of the new law firms took a portion of the former firm's active cases, and the clients involved executed the appropriate substitutions of attorney. In allocating the fees subsequently derived from those cases, the trial court devised an elaborate formula, based partly on *Fracasse* v. *Brent, supra,* 6 Cal.3d 784. The appellate court reversed, holding that the fees were to be allocated to the former partners according to their right to fees in the former partnership. Citing the Uniform Partnership Act (Corp. Code, § 15001 et seq.) and *Rosenfeld, Meyer &*

---

[2]The crucial series of interrogatories requested appellant to provide the hours spent and a detailed description of services performed, not only as to the cases respondents took with them, but also as to the cases which stayed with appellant, even though under respondents' theory of the case respondents would be entitled to their percentage share of the fees actually received, regardless of the time spent or the actual services performed by appellant.

Appellant repeatedly declined to provide such details, contending that appellant had already provided copies of ledger cards showing the fees charged and received, that appellant did not keep time records, and that it would be excessively burdensome on appellant and Abrams to review all the contents of the client files to attempt to reconstruct the hours spent and services performed.

[3]In favor of Fox against appellant for fees derived from work in process, $25,235; in favor of Fox & Gibson, a law corporation, as assignee of the interests of Fox and Gibson, against appellant for fees derived from work in process, after offsetting amounts conceded to be due to appellant for quantum meruit, $78,253; in favor of Moseley against appellant for fees derived from work in process, $22,391.

The judgment also includes $12,827 in favor of Fox against Abrams individually on Abrams' obligation pursuant to the buy-sell agreement to purchase Fox's shares of stock at book value. Gibson and Moseley asserted similar claims but abandoned them prior to trial.

*Susman* v. *Cohen* (1983) 146 Cal.App.3d 200 [194 Cal.Rptr. 180], the court reasoned that the cases in progress constituted unfinished business of the former partnership, which partnership continued for the purpose of winding up its affairs, and that none of the former partners could seek extra compensation for services rendered in completing unfinished business. (*Jewel* v. *Boxer, supra,* 156 Cal.App.3d at pp. 176-177; *Rosenfeld, Meyer & Susman* v. *Cohen, supra,* 146 Cal.App.3d at pp. 216-220.) The *Jewel* court further held that the trial court had erred in allocating postdissolution income on a quantum meruit basis under *Fracasse* v. *Brent, supra,* 6 Cal.3d 784. (*Jewel* v. *Boxer, supra,* 156 Cal.App.3d at pp. 177-178, 180.) "[T]he right of a client to the attorney of one's choice and the rights and duties as between partners with respect to income from unfinished business are distinct and do not offend one another. Once the client's fee is paid to an attorney, it is of no concern to the client how that fee is allocated among the attorney and his or her former partners." (*Jewel* v. *Boxer, supra,* 156 Cal.App.3d at p. 178.) The subsequent executions of substitutions of attorney did not alter the character of the cases as unfinished business of the former firm. (*Id.; Rosenfeld, Meyer & Susman* v. *Cohen, supra,* 146 Cal.App.3d at p. 219.)

The same reasoning compels the conclusion in the instant case that the work in process on the dates of the resignations was unfinished business of the former firm; that the parties were entitled to share in the fees subsequently derived in proportion to their interests in the former firm; and that the trial court erred in granting such relief only to respondents while denying it to appellant and limiting appellant to the reasonable value of services performed on cases which respondents took with them to their new law practice.

Respondents seek to avoid the reasoning of *Jewel* by arguing (1) *Jewel* applies only where there is no written agreement to the contrary, and that here the parties' buy-sell agreement is to the contrary; and (2) *Jewel* does not apply because it is based on partnership law whereas here the parties practiced together in a law corporation. We find no merit to these contentions.[4]

---

[4]Respondents also complain the point is raised for the first time on appeal. Appellant of course could not have cited *Jewel* or *Rosenfeld* to the trial court, because they were decided after the trial court rendered its judgment. Although in some of appellant's complaints, cross-complaints, and causes of action, appellant sought only the reasonable value of services rendered, appellant itself citing *Fracasse* v. *Brent,* appellant also asserted a cause of action for breach of fiduciary duty, as to which appellant requested to be awarded all the fees earned by respondents on the work in process cases. Appellant argued to the trial court several theories of constructive trust and fiduciary obligation which anticipated to some extent the reasoning of *Jewel* v. *Boxer* that the work in process constituted an asset of the former law firm. Respondents conceded that appellant had an interest in the fees earned by

Respondents point out that in *Jewel* v. *Boxer* the court relied on general principles because there was no written agreement of the parties allocating the fees. (*Jewel* v. *Boxer, supra,* 156 Cal.App.3d at pp. 179-180.) Respondents contend that in this case, the buy-sell agreement otherwise provides. This contention lacks merit. Respondents based their claims for their percentage shares of appellant's subsequently derived fees on paragraph V of the buy-sell agreements.[5] While that paragraph tends to support their claims against appellant, it is silent toward, and does not expressly preclude, a corresponding claim by appellant against them. The agreement does not prevent resort to the equitable principles of *Jewel* v. *Boxer* rather than *Fracasse* v. *Brent* as contended by respondents below. Failure of the buy-sell agreement to expressly include mention of appellant's rights against departing shareholders is probably due to the fact that, as stated in their preambles, the agreements were intended to deal with the events of "death, disability, or disqualification from the practice of law," and the parties likely never contemplated that paragraph V would be exercised by a member who resigned in order to practice law in competition with the firm by taking a number of the firm's pending cases with him. (See *Frates* v. *Nichols* (Fla.App. 1964) 167 So.2d 77, 82, cited in *Jewel* v. *Boxer, supra,* 156 Cal.App.3d at p. 177.)

Finally, respondents contend that *Jewel* v. *Boxer* is a partnership case which should have no application because this case involves a law corpo-

respondents on work in process, and the real issue is a question of law, whether appellant's interest should be measured by the parties' former percentage shares or by the *Fracasse* v. *Brent* test. Appellant was deprived of the opportunity to contest respondents' main complaint, because appellant's answer and affirmative defenses were stricken based on the assumption that *Fracasse* v. *Brent* was applicable. The reasoning of *Jewel* which subjects that assumption to critical analysis should be considered even though *Jewel* necessarily could not be cited until the appeal.

[5]Paragraph V of the 1973 buy-sell agreement provides: "In the event a shareholder herein is not practicing law on behalf of this law corporation or acting as an attorney pursuant to court order or acting on behalf of a legal aid or similar organization, he ceases to be an eligible shareholder, and must sell to the surviving shareholders in the proportions set out in paragraph IV all of his shares not later than sixty (60) days following the date of ineligibility as hereinafter defined. [¶] In the event of disability, physical or mental, or ineligibility as set forth in this paragraph V, or from whatever cause, to actively continuously practice law for a period of six (6) months, or failure to be an active member of the State Bar of California by payment of dues, a shareholder shall cease to be an eligible shareholder. In such instance, the surviving shareholders shall pay to such shareholder for his shares, the book value of his shares on the books of the corporation as of the date he becomes ineligible as hereinbefore defined, and the corporation shall pay to the disabled or ineligible shareholder that proportion, (which the disabled or ineligible shareholder's stock in the corporation bears to the total issued and outstanding shares of stock in said corporation) of all accounts receivable and fees derived from work in process as of the date he becomes disabled or ineligible as hereinabove defined, as continuation of said disabled or ineligible shareholder's salary for the services rendered theretofore by said shareholder to the corporation before the date of disability or ineligibility. The salary mentioned herein shall be payable on the first day of the second month following the collection thereof by the corporation of the accounts receivable or fees derived from work in process items."

ration. Respondents offer no persuasive reason why the principles of *Jewel* v. *Boxer* should not apply.

First, *Jewel* v. *Boxer* was not based solely on partnership law but also cited "sound policy reasons" for its decision. "The rule prevents partners from competing for the most remunerative cases during the life of the partnership in anticipation that they might retain those cases should the partnership dissolve. It also discourages former partners from scrambling to take physical possession of files and seeking personal gain by soliciting a firm's existing clients upon dissolution. Boxer and Elkind argue that application of the rule in the present context will discourage continued representation of clients by the attorney of their choice, as former partners will not want to perform all of the postdissolution work on a particular case while receiving only a portion of the income generated by such work. Of course, this is all the former partners would have received had the partnership not dissolved. Additionally, the former partners will receive, in addition to their partnership portion of such income, their partnership share of income generated by the work of the other former partners, without performing any postdissolution work in those cases. On balance, the allocation of fees according to each partner's interest in the former partnership should not work an undue hardship as to any partner where each partner completes work on the partnership's cases which are active upon its dissolution." (*Jewel* v. *Boxer, supra,* 156 Cal.App.3d at pp. 179-180.)

Applying the reasoning of *Jewel* is fair to both sides and prevents the lawyers from scrambling for the work in process as the law firm breaks up. Respondents' reasoning leads to a one-sided result, based upon an arbitrary characterization of themselves as "departing" and appellant as "remaining," left holding the bag to pay compensation to the departed members.[6] The law should simply recognize that the lawyers once practiced together and are now practicing separately on the same cases as before, and no good purpose is served by characterizing one entity as the members who left and the other entity as the members who remained.

*Jewel* v. *Boxer* is also based in part upon fiduciary obligations of law partners. It is well-known that the primary purpose of the laws permitting professionals to incorporate was to allow them to take advantage of various

---

[6]On a motion for summary judgment appellant offered evidence from Fox's deposition that Fox and Gibson, prior to their resignations, had discussed with each other whether to resign or, on the other hand, to "kick Abrams out" and that their interpretation of the buy-sell agreement was a major consideration favoring the former course rather than the latter.

At oral argument respondents contended that if Abrams had become ineligible as a shareholder rather than respondents, he would have received the continuation fees for work in process and respondents would have been limited to quantum meruit.

tax benefits available to corporate employers and employees.[7] There is no reason to hold that when lawyers decide to practice together in corporate form rather than partnership, they are relieved of fiduciary obligations toward each other with respect to the corporation's business. This is not to say that respondents in this case breached a fiduciary obligation to appellant. The trial court's discovery sanctions did not affect appellant's causes of action which were based on traditional theories of breach of fiduciary duty by corporate officers or majority shareholders. (See *Bancroft-Whitney Co. v. Glen* (1966) 64 Cal.2d 327, 347-348 [49 Cal.Rptr. 825, 411 P.2d 921, 24 A.L.R.3d 795]; *Jones v. H. F. Ahmanson & Co.* (1969) 1 Cal.3d 93, 108 [81 Cal.Rptr. 592, 460 P.2d 464].) After trial of these causes the court made findings of fact concluding that respondents had not acted wrongfully; that respondents did not, for example, disparage appellant, conspire to injure appellant's business, misuse confidential information or convert assets of appellant, and that respondents acted properly in notifying clients of their new location and law practice. What we do say, however, is that attorneys practicing together in a law corporation owe each other fiduciary duties very similar to those owed by law partners, and therefore the fact that a law corporation is involved is no reason to disregard the fair and reasonable principles of *Jewel* v. *Boxer* or to interpret the parties' agreement in a manner favoring one group over another.

Applying these principles to the facts of this case, we conclude that the work in process should be considered unfinished business of the former firm and that the fees derived from such cases should be divided on the basis of a *Jewel* v. *Boxer* formula. In the circumstances of this case, it is not reasonable to apply the salary continuation formula of the buy-sell agreements to one side only, and the erroneous *Fracasse* v. *Brent* formula to the other side, based on an arbitrary characterization of one side as leaving and the other side as remaining.

This conclusion requires that the court's discovery sanction orders and portions of its judgment be reversed.[8] Certain other of the numerous causes

---

[7]Freutel and Frost, *Why Lawyers Should Have the Right to Practice in Corporate Form* (1962) 37 State Bar J. 874, 896; Marcus, *Why Lawyers Should Not Be Permitted to Practice in Corporate Form* (1962) 37 State Bar J. 898; Eliasberg, *The Professional Corporation* (1971) 3 U. West L.A. L.Rev. 63; Corporations Code section 13400 et seq.; Business and Professions Code section 6160 et seq.; Law Corporation Rules of the State Bar of California, Deering's California Codes Annotated Rules, page 417, 23 West's Annotated Professional Rules, part 2, page 693.

[8]This is *not* intended *to* condone appellant's failure to fully answer the interrogatories after the trial court three times rejected appellant's arguments that it was sufficient to disclose the ledger cards and that it would be unduly burdensome to estimate the hours involved and services performed. The fact remains, however, that based on *Jewel* rather than *Fracasse,* the requested answers are not essential to the litigation.

of action in this litigation involve entirely collateral issues. On remand, the trial court can determine which causes must be retried to conform to the views expressed in this opinion.

The judgment is reversed and the trial court is directed to vacate its order of October 9, 1980.

Feinerman, P. J., and Hastings, J., concurred.

A petition for a rehearing was denied February 4, 1985, and respondents' petition for a hearing by the Supreme Court was denied March 20, 1985.