**Timothy F. KELLY, Appellant (Plaintiff and Counter–Defendant below),**

v.

**J.B. SMITH, Robert F. Parker, Randall J. Nye, Andrew J. Fetsch, and Daniel W. Glavin, Appellees (Defendants and Counterclaimants below).**

No. 37S04–9303–CV–388.

Supreme Court of Indiana.

March 26, 1993.

Daniel A. Medrea, Karen L. Hughes, Lucas, Holcomb & Medrea, Merrillville, for appellant.

Fred M. Cuppy, Kathryn D. Schmidt, Burke Murphy Constanza & Cuppy, Merrillville, for appellees.

## ON PETITION TO TRANSFER

KRAHULIK, Justice.

This case concerns the division of legal fees earned after the dissolution of a law partnership. Timothy F. Kelly (Plaintiff and Counter–Defendant below) seeks transfer from the Court of Appeals opinion which affirmed the grant of partial summary judgment in favor of J.B. Smith, Robert F. Parker, Randall J. Nye, Andrew J. Fetsch and Daniel W. Glavin (Defendants and Counterclaimants below) (the "Firm"). *Kelly v. Smith* (1992), Ind.App., 588 N.E.2d 1306.

### Proceedings Below

The parties to this action, Kelly and the Firm, practiced law together in the partnership of Beckman, Kelly & Smith. Their relationship was governed by a written partnership agreement which incorporated the Uniform Partnership Act ("UPA"), *Ind. Code* § 23–4–1–1 through § 23–4–1–43, to govern matters not addressed by or in conflict with the partnership agreement.

On March 21, 1989, Kelly notified his partners that as of March 31, 1989, he would withdraw from the partnership. Following Kelly's withdrawal, the remaining partners continued to practice together under the name of Beckman, Kelly &

Smith, but some of the Firm's clients directed that their files be transferred to Kelly's new firm so that Kelly could continue legal representation. Additionally, some of the Firm's employees left the Firm to work for Kelly.

Shortly after his withdrawal, Kelly and Elizabeth D. Kelly, his mother, filed a Verified Complaint for Preliminary Injunction with the Lake Superior Court requesting the court to restrain the Firm from using the "Kelly" name in the title of the law firm. The Firm filed a counterclaim. In Count I of its counterclaim, the Firm asserted that the matters removed by Kelly from the Firm were assets of the Firm and, consequently, Kelly was liable to the Firm for all legal fees generated by these matters, although the Firm conceded that Kelly was entitled to retain his partnership interest in these fees.

The Firm filed a summary judgment motion on Count I of its counterclaim and the trial court granted a partial summary judgment in favor of the Firm. The partial summary judgment held that the Firm was entitled to its share of fees earned by Kelly after his withdrawal on matters removed from the Firm. However, the trial court found that a genuine issue of material fact existed as to Kelly's partnership interest, the matters which were partnership assets, and the amount of fees which were earned on these matters. The trial court also held that the granting of the partial summary judgment was a final and appealable order.

After his motion to correct errors was denied by the trial court, Kelly appealed to the Court of Appeals and raised several issues. Among the claimed errors was the trial court's construction of the partnership agreement. The Court of Appeals affirmed the trial court. In his petition to transfer, Kelly challenges the division of subsequently-earned legal fees. We grant transfer in order to resolve this issue.[1]

## Issues Presented

Kelly asserts that (1) the Court of Appeals improperly divided the legal fees earned after dissolution because the part-

nership agreement required that all matters of the partnership be valued as of the date of dissolution; (2) it was improper to require the departing partner to return fees to the Firm when the Firm did not have a reciprocal duty to pay fees to Kelly; and (3) the agreement violates the Rules of Professional Conduct because it restricts his ability to practice law after withdrawing from the partnership.

The Firm asserts that, because the partnership agreement is silent regarding payments to be made by the withdrawing partner to the Firm after his withdrawal, the UPA is used to complete the partnership agreement and, pursuant to the UPA, Kelly owes the Firm its share of fees earned after dissolution on matters removed by Kelly. In conjunction with this argument, the Firm asserts that because the UPA, and not the partnership agreement, requires Kelly to remit the fees to the firm, the Rules of Professional Conduct are not violated. The Firm also argues that it does not owe Kelly any fees earned after dissolution for matters which remained with the Firm, because the partnership agreement provided the sole method of calculating the amount of money which is owed to the withdrawing partner.

## Discussion

The partnership agreement, more particularly Paragraph 6, titled Termination and Buy–Out, established the value of the withdrawing partner's interest in the partnership as of the last day of the month of withdrawal. In calculating the withdrawing partner's interest, the Firm valued the partner's net capital account, vested interest in receivables, and vested interest in contingent fee cases. The agreement then stated the formula used to determine each of these values. The agreement, however, did not address the withdrawing partner's obligation to the Firm after his withdrawal for matters which followed him, nor did it address whether the Firm has any obligation beyond Paragraph 6 to the withdrawing partner.

---

**1.** Although Kelly raised several other issues in his petition to transfer, we find it unnecessary to address them because of our resolution regarding the division of legal fees.

When a court is asked to interpret an agreement, it is necessary for the court to examine the parties' intent when they wrote the agreement. *First Federal Sav. Bank v. Key Markets* (1990), Ind., 559 N.E.2d 600, 603; *DeHaan v. DeHaan* (1991), Ind.App., 572 N.E.2d 1315, 1320; *Hollars v. Randall* (1990), Ind.App., 554 N.E.2d 1177, 1179. The court, in interpreting the agreement, is under an obligation to read the agreement in a manner which harmonizes its provisions as a whole and to give effect to the parties' expressed intent. *First Federal*, 559 N.E.2d at 603; *DeHaan*, 572 N.E.2d at 1320; *McCae Management v. Merchants National Bank & Trust* (1990), Ind.App., 553 N.E.2d 884, 887.

As stated previously, the partnership agreement incorporated the UPA as governing "except as otherwise provided," and stated that, if there were a conflict between the UPA and the partnership agreement, the partnership agreement controlled. Here, the partnership agreement addressed the withdrawal of a partner by providing a buy-out provision. As a result, the partners agreed on what would occur upon a partner's withdrawal from the Firm. It is clear that the parties intended that the UPA be preempted by the agreement and that the affairs between them be wound up at the moment of the withdrawal of a partner. Therefore, the Firm's contention is correct that Kelly should receive no subsequent payment from the Firm except that which is provided in Paragraph 6. Likewise, however, the Firm is not entitled to receive payments for legal services provided by Kelly in matters which followed Kelly. This decision gives effect to the parties' intent which was to wind up partnership affairs at the moment of dissolution.

In reaching this conclusion, we are cognizant of the line of cases which hold that work-in-progress at the time of dissolution is a partnership asset of the dissolved firm and that the partners have an obligation to complete this work on behalf of the partnership. These cases recognize that absent an agreement, the partners' fiduciary duties continue until the windup is completed and that the partners are entitled to receive their partnership interest in the profits from this work. *See Fox v. Abrams* (1985), 163 Cal.App.3d 610, 210 Cal.Rptr. 260; *Jewel v. Boxer* (1984), 156 Cal.App.3d 171, 203 Cal.Rptr. 13; *Rosenfeld Meyer & Susman v. Cohen* (1983), 146 Cal.App.3d 200, 194 Cal.Rptr. 180; *Beckman v. Farmer* (1990), D.C.App., 579 A.2d 618; *Frates v. Nichols* (1964), Fla.App., 167 So.2d 77; *Ellerby v. Spiezer* (1985), 138 Ill.App.3d 77, 485 N.E.2d 413; *Resnick v. Kaplan* (1981), 49 Md.App. 499, 434 A.2d 582; *Smith v. Daub* (1985), 219 Neb. 698, 365 N.W.2d 816; *Gray v. Martin* (1983), 63 Or.App. 173, 663 P.2d 1285; Alan R. Bromberg & Larry E. Ribstein, *Bromberg and Ribstein On Partnership* § 7.08 (1992).

The facts of this case, however, are distinguishable from those found in the above-cited cases. In each of those cases, the court resolved the case by looking to principles of general partnership law because the partners did not have an agreement which governed upon dissolution. In the present case, the partners addressed the issue of a partner's withdrawal in their partnership agreement, stated their intent to have a "clean break," and provided for payment to the withdrawing partner, but simply failed to cover the issue of the withdrawing partner's payment to the partnership. To impose the agreement on one half of the equation and the UPA on the other half of the equation leads to an inequitable result and defeats the intent of the parties in creating the agreement.[2]

---

**2.** For instance, under the Firm's interpretation of the partnership agreement, Kelly's partnership interest would be valued as of the dissolution date and he would receive nothing beyond that calculated value. The Firm, on the other hand, would be entitled to receive from Kelly the Firm's percentage of fees earned after dissolution on matters which followed Kelly without an allowance for overhead expenses. Translated into dollars, this would mean that of the approximately $600,000 gross fees earned by Kelly after dissolution, Kelly would be required to pay to the Firm approximately $480,000. At the same time, Kelly would receive nothing from the fees subsequently earned on matters remaining with the Firm.

Equally inequitable, however, would be the result reached if Kelly were held to have no duty to account to the Firm for efforts expended by the Firm prior to the dissolution on behalf of clients who chose to "go with" Kelly. We recognize that separate relationships exist in a partnership and that, although they exist simultaneously, they are independent of each other. These relationships are (a) those between the partners, and (b) those between the attorneys and the clients. Although the firm may refer to clients of the firm as "the firm's clients," clients are not the "possession" of anyone, but, to the contrary, control who will represent them. Consequently, a client is able to discharge the firm at any time. Though a client may discharge the firm from performing further service on behalf of the client, this does not relieve the client from the obligation to pay the firm for the reasonable value of services which the firm performed on behalf of the client prior to dismissal. It is a well-established legal principle that an attorney who is discharged by a client, with or without cause, may recover the reasonable value of services provided for the client before discharge on the basis of *quantum meruit*. *French v. Cunningham* (1898), 149 Ind. 632, 639, 49 N.E. 797, 799; *Estate of Forrester v. Dawalt* (1990), Ind.App., 562 N.E.2d 1315, 1317.

### Decision

We now apply these principles to the case at hand. Upon Kelly's withdrawal, the partnership dissolved pursuant to the parties' agreement. It is this date, the dissolution date, which is used to determine the value in the dissolved partnership of both the withdrawing partner, Kelly, and the Firm. The parties stated the withdrawing partner's interest in Paragraph 6 of their agreement. As a result, Kelly's interest is determined by applying the formula contained in Paragraph 6.

Although the application of the Paragraph 6 formula resolves the obligations of the relationship between the partners, it does not satisfy the obligations of the relationship between the attorneys and the clients. Clients selected Beckman Kelly & Smith as the clients' attorney. The Firm performed legal services for the clients and built up a "value" in the matter. Upon the firm's dissolution, two new and separate entities were born, (a) Beckman Kelly & Smith consisting of the former partners minus Kelly, and (b) Kelly's new law firm. At this point, clients had the choice, as the clients did at all times, to chose their attorney. Some of Beckman Kelly & Smith's clients decided to remain with Beckman, Kelly & Smith and others decided to take their matters to Kelly's new law firm. Just as if a client had discharged the Firm and taken the matter to an unrelated law firm, the Firm is entitled to recover the reasonable value of its services performed prior to the client's choice to terminate the Firm and employ Kelly's new firm. In other words, the Firm holds an attorney's lien for the *quantum meruit* value as of the dissolution date against matters which left the Firm.

Contrary to the suggestions of the Firm, it is our belief that our resolution will not create a situation where attorneys participate in an "inevitable jockeying" for cases which would create a "seamy picture" of the profession, but rather will encourage attorneys to examine their own partnership agreements to insure that they are well thought-out agreements and that they cover all of the essential issues which arise inevitably upon the withdrawal of a partner.

### Conclusion

Accordingly, we grant transfer, vacate the opinion of the Court of Appeals, and reverse the trial court's entry of partial summary judgment on Count I of the Firm's counterclaim, and remand this case to the trial court for proceedings consistent with this opinion.

SHEPARD, C.J., and DICKSON, J., concur.

DeBRULER, J., dissents, with separate opinion in which GIVAN, J., concurs.

GIVAN, J., dissents, without opinion.

DeBRULER, Justice, dissenting.

Appellant Kelly voluntarily entered into a partnership contract which expressly provided in pertinent part, as follows:

6. *Termination and Buy–Out.* This agreement and this partnership may be terminated by any partner beginning One Hundred Twenty (120) days after notice in writing of intention to do so is given to the other partners. In the event of the death, retirement, or *withdrawal of a partner, such partner shall be paid in accordance herewith* and as computed hereunder, his net capital account, his vested interest in receivables, and his vested interest in contingent fee cases
. . .

(Emphasis added.) I agree with the Court of Appeals that this provision of the contract contains no specific provision describing what is to become of the interests of the remaining partners when the withdrawing partner is paid off. However, I disagree that it is silent on and does not cover that subject. Language may carry meaning by virtue of its specific context. Such implied meaning are "based on tacit assumptions reliable enough to generate identifiable expectations in the particular audience." Reed Dickerson, The Interpretation and Application of Statutes 41 (1975). The implied meaning carried by paragraph 6, when read in the context of this partnership agreement, is that upon fulfilment of the duties imposed upon the remaining partners by paragraph 6, the balance of all interests of the partnership, whatever they might be, would pass to the remaining partners and any arrangement they might strike. Upon receipt of all that is specified and due under this provision, the withdrawing partner foregoes any further interest.

When appellant Kelly, after withdrawing, sought to fulfill the duties of the partnership imposed by extant (yet unfulfilled) contracts of the partnership to provide legal services to clients and to enjoy the benefits of those contracts of the partnership, he did so in contravention of his agreement with his partners. To be sure, and for the benefit and protection of clients, Kelly and each of his former part-ners remained obligated upon the contracts of the partnership after Kelly withdrew, unless those contracts provided otherwise, or the client released them. Ind.Code § 23–4–1–36; 2 Alan R. Bromberg et al., Bromberg & Ribstein On Partnership § 7.14. However, as between Kelly and his former partners, it would be just and proper to impose a constructive trust on the fees earned by Kelly for fulfilling contracts of the partnership intended for the benefit of all partners. *See Boushehry v. Ishak* (1990), Ind.App., 550 N.E.2d 784 (modified on rehearing on other grounds, 560 N.E.2d 116). Of course, Kelly would be entitled to keep all fees which he earned from the clients of the partnership if those fees were based upon contracts that were made with Kelly after he withdrew.

I respectfully dissent and would affirm the trial court on these alternate grounds in accordance with Ind.Appellate Rule 15(E) and (N).

GIVAN, J., concurs.