H. DANIEL SMITH AND FREDERICK D. STEHLIK, APPELLANTS, V. RUSSELL S. DAUB, APPELLEE.

365 N.W.2d 816

Filed April 12, 1985.   No. 84-074.

H. Daniel Smith of Stehlik, Smith & Trustin, for appellants.

Virgil J. Haggart, Jr., of Gaines, Otis, Haggart, Mullen &

Carta, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

KRIVOSHA, C.J.

This is an action by two members of a dissolved law partnership for an accounting. Following trial, the district court for Douglas County, Nebraska, found generally for appellee partner, Russell S. Daub, and against appellant partners, H. Daniel Smith and Frederick D. Stehlik. Specifically, the district court in effect found that a course of dealing among the parties amounting to an agreement entitled Daub to be compensated during the life of the partnership at a rate twice that of Smith and Stehlik. The district court further found that in winding up the affairs of the partnership the various partners were not entitled to receive any additional salary for their services and were entitled to be compensated during the winding up of the partnership in the same proportion as they were paid during the existence of the partnership. The district court therefore held that appellant Smith should be compensated for handling various contingent fee cases assigned to him in connection with the winding up of the partnership in the same ratio as he was compensated during the life of the partnership. Finally, the district court found that the time expended on legal services in connection with appellee Daub's personal business interests did not obligate Daub to reimburse the partnership for time so spent.

Smith and Stehlik have appealed the decision and assign as error the district court's findings in regard to these three issues. On review we believe the district court was correct in its findings, and, accordingly, we affirm.

The record discloses that the three lawyers formed a partnership in March of 1980 and continued the partnership under the firm name of "Daub, Stehlik & Smith" until it was dissolved by mutual consent of all of the parties on October 13, 1982. No formal partnership agreement was ever executed by the parties, and all agreements such as may have existed were oral. While there was a conflict in the evidence as to whether there had been any prior discussions concerning the

distribution of profits, the manner in which the profits were in fact distributed is without dispute. For the first year Daub drew at a rate of $3,000 per month, while Stehlik and Smith each drew at a rate of $1,500 per month. At some time in 1980 Stehlik's draw was increased to $1,700 per month, without any corresponding increase in Daub's or Smith's draws, but this does not appear to be a significant issue. The 1980 partnership tax return and schedules K-1 for the individual partners reflected that the profits were divided 50 percent to Daub and 25 percent each to Stehlik and Smith.

In 1981 the partnership realized greater profitability and the partners' monthly draws were increased so that Daub drew $4,000 per month and Stehlik and Smith each drew $2,000 per month. At several times during 1981 when the parties determined that the firm had accumulated cash in excess of current expenses and partners' draws, the excess funds were distributed 50 percent to Daub and 25 percent each to Stehlik and Smith. The partners' draws for 1982 remained $4,000 per month for Daub and $2,000 per month each for Stehlik and Smith. Any surplus funds accumulated in 1982 were distributed in a ratio of 50 percent to Daub and 25 percent each to Stehlik and Smith. With the exception of the 1981 partnership tax return, all of the evidence reflects that whenever the parties in fact drew or distributed moneys, it was always done on the basis of 50 percent to Daub and 25 percent each to Stehlik and Smith. The one bit of conflicting evidence was the 1981 partnership tax return, which showed a beginning profit ratio of 50 percent to Daub and 25 percent each to Stehlik and Smith and a yearend ratio of one-third to each of the parties. Stehlik and Smith argue that this demonstrates either a lack of "course of dealing" or a change in such "course of dealing" to reflect equal shares in distribution. Daub, on the other hand, argues that the return, the preparation of which was supervised by Stehlik, shows either a mistake on the part of the accounting firm or an unauthorized exercise of authority on the part of Stehlik. Regardless of what the 1981 return may reflect, the fact of the matter is that the funds were distributed at all times on a basis of 50 percent to Daub and 25 percent each to Stehlik and Smith.

The evidence further reflects that at the time of the

dissolution of the partnership, the parties apparently divided up the various pending cases to be completed. Smith ended up with the responsibility for most of the contingent-fee cases. He argues that at a minimum he should receive one-third of the fees realized from these cases, and, in any event, should receive additional compensation for closing the files.

The evidence further discloses that prior to the formation of the partnership, the parties agreed that if any of them did any legal work for members of their families other than themselves, the work would be billed and the individuals for whom the work was done should be required to pay the partnership. The evidence is in conflict, however, with regard to the partners' own personal work. Stehlik maintains that the parties agreed that the partnership would be paid for all legal work, including work personally done for the partners. Daub, on the other hand, maintains that the parties agreed to charge members of their families but not the partners themselves. Smith was billed for work done by Stehlik in connection with his divorce, although Smith was not billed for the work he did himself. After the partnership was dissolved Daub was billed for time he spent in connection with certain personal business matters in which he or his wife had an interest.

As this is an action for an accounting between partners and therefore an equitable proceeding, the standard of review by this court is de novo on the record. *Langness v. "O" Street Carpet Shop*, 217 Neb. 569, 353 N.W.2d 709 (1984); *Badran v. Bertrand*, 214 Neb. 413, 334 N.W.2d 184 (1983); *Philip G. Johnson & Co. v. Salmen*, 211 Neb. 123, 317 N.W.2d 900 (1982). Although it is de novo on the record, we must nevertheless recognize that where the evidence is in conflict, we will give weight to the fact that the trial court had the opportunity to see the witnesses and weigh their credibility. *Jackson v. Clemens*, 216 Neb. 641, 345 N.W.2d 28 (1984); *Knudtson v. Trainor*, 216 Neb. 653, 345 N.W.2d 4 (1984).

With these rules in mind we turn to the first issue, which requires us to determine whether, for purposes of sharing profits, the parties were equal partners or had reached some other agreement.

Neb. Rev. Stat. § 67-318 (Reissue 1981), which is a part of

the Uniform Partnership Act, Neb. Rev. Stat. §§ 67-301 to 67-343 (Reissue 1981), provides in part as follows: "The rights and duties of the partners in relation to the partnership shall be determined, *subject to any agreement between them*, by the following rules: (a) Each partner shall . . . share equally in the profits and surplus remaining after all liabilities . . . ." (Emphasis supplied.) Smith and Stehlik argue that the evidence fails to disclose any contrary agreement between the parties, and therefore the provisions of § 67-318(a) require that the profits and advances be shared equally. More specifically, Smith and Stehlik argue that while there may be evidence of some course of dealing, § 67-318(a) provides for equal distribution of profits unless the partners *expressly* agree to the contrary. We find, however, no such language in § 67-318, nor do the cases which have considered this matter reach such a conclusion. In support of their position Smith and Stehlik cite to us the case of *Barthuly v. Barthuly*, 192 Neb. 610, 223 N.W.2d 429 (1974). *Barthuly* was an action for an accounting between partners in a retail service station. One of the partners sought to receive *additional* compensation for bookkeeping services performed by her. In refusing to permit her to receive this additional compensation, this court said:

> The evidence does not support a finding that Reuben agreed to a salary for Frances. . . . A partner is not entitled to charge the partnership account for his services unless there is an express agreement that he shall be compensated for such services. Gee v. City of Sutton, 149 Neb. 603, 31 N.W.2d 747. It follows, therefore, that the accounting cannot include compensation for Frances' services as a partner since there was no express agreement between the partners for such compensation.

*Id.* at 614, 223 N.W.2d at 432.

A careful reading of the *Barthuly* decision discloses that it has no application in the instant case. In *Barthuly* the parties conceded that they were 50-50 partners, and the partner seeking *additional* compensation had never received such compensation during the course of the partnership. She was simply seeking to require an accounting for such services long after the services had been performed and unpaid. This court

held that absent an express agreement to compensate her for those services, she was not entitled to receive them upon dissolution of the partnership. While perhaps the use of the phrase "express agreement" was unnecessary, it is clear that *Barthuly* does not stand for the proposition asserted by Smith and Stehlik. In *Barthuly* the evidence established that the parties had neither an express agreement nor a course of dealing which could be considered as an agreement intending to vary the provisions of § 67-318(a). One would be required to simply disregard all of the evidence in this case and the past dealings of the parties in order to arrive at the conclusion contended for by Smith and Stehlik.

In view of the fact that § 67-318 does not require "an express agreement," and in view of the fact that the evidence discloses that the parties dealt with each other in a particular manner, we believe that the parties did in fact modify the provisions of § 67-318(a) so as to provide that the profits and advances of the parties were to be distributed 50 percent to Daub and 25 percent each to Stehlik and Smith. This court, in attempting to construe the meaning of a contract, has frequently held that the interpretation given a contract by the parties themselves while engaged in the performance of it is one of the best indications of the true intent of the contract, and ordinarily such construction of the contract should be enforced. See *Lortscher v. Winchell*, 178 Neb. 302, 133 N.W.2d 448 (1965). This rule has been applied not only with regard to ambiguities contained within a written contract but with regard to oral contracts as well. See, *Kinkenon v. Hue*, 207 Neb. 698, 301 N.W.2d 77 (1981); *Dunmire v. Cool*, 195 Neb. 247, 237 N.W.2d 636 (1976). Our review of the record convinces us that § 67-318(a) does not require an "express agreement" in order to vary the terms of that section but that the manner in which the parties dealt with each other during the life of the partnership may be considered in determining whether there was an agreement between the parties. In making such a review we are convinced that the parties agreed, contrary to the provisions of § 67-318(a), to divide the profits and advances in a ratio of 50 percent to Daub and 25 percent each to Stehlik and Smith. The district court committed no error in regard to this issue.

We turn, then, to the second issue, of whether Smith is entitled to be compensated at some rate other than that which existed during the term of the partnership for work performed by him following the dissolution of the partnership. The district court found that he was not entitled to additional compensation, and we agree.

The Uniform Partnership Act makes it clear that the dissolution of the partnership does not terminate the partnership for all purposes. Specifically, § 67-329 provides: "The dissolution of a partnership is the change in the relation of the partners caused by any partner ceasing to be associated in the carrying on as distinguished from the winding up of the business." Section 67-330 provides that "[o]n dissolution the partnership is not terminated but continues until the winding up of partnership affairs is completed." Both under the provisions of the Uniform Partnership Act and the Code of Professional Responsibility, the partnership of Daub, Stehlik, and Smith was obligated to complete the work for the clients or afford the clients an opportunity to seek other counsel. Until the work was either completed or the partnership discharged from any further responsibility in connection with the work, the partnership could not be terminated. A partnership only terminates when the business of the partnership has been wound up. See *Essay v. Essay*, 175 Neb. 689, 123 N.W.2d 20 (1963). Therefore, whatever rules apply with regard to distribution before the partnership is dissolved apply after it is dissolved but before it is terminated by winding up the affairs of the partnership. Section 67-318(f) specifically provides: "No partner is entitled to remuneration for acting in the partnership business, except that a surviving partner is entitled to reasonable compensation for his services in winding up the partnership affairs." Smith, of course, was not here a surviving partner. Section 67-318(f), like § 67-318(a), is subject to change only where the evidence establishes, either expressly or by course of dealing, that the parties intended to modify the language of the statute. Because the record is devoid of any evidence to establish either an agreement or a course of dealing amounting to an agreement, the district court was correct in its ruling on this point.

That leaves us, then, with the final issue, of whether Daub is indebted to the partnership for services performed by him on his own behalf in connection with personal matters. In this regard the evidence is simply in irreconcilable conflict. Smith and Stehlik maintain that the parties agreed that each would bill himself for his own personal work. Daub maintains that personal work was an exception. The evidence reflects instances in which both positions were followed. In resolving this conflict we are persuaded by two points. First, the district court had an opportunity to view the witnesses and resolve any dispute. We are further inclined to affirm the trial court on this last matter due to the fact that the evidence indicates that the parties were at all times aware that Daub was performing these services and not billing himself, yet no demand was made that billings be rendered or payment made. We are inclined to believe that the parties did not intend that the partnership be compensated for the partners' personal work.

The lesson to be learned from all of this is that most disputes and subsequent litigation could be eliminated if parties reduced to writing that to which they agreed. Once again we have the situation of the poor shoemaker's son who has no shoes—only this time it is the shoemakers themselves who are barefoot.

The judgment of the district court is therefore in all respects affirmed.

AFFIRMED.