SCHREMPP AND SALERNO, FORMERLY KNOWN AS SCHREMPP, GROSS & SALERNO, A NEBRASKA GENERAL PARTNERSHIP, APPELLEE, V. JOSEPH F. GROSS, JR., APPELLANT, AND BYAM & BYAM, A NEBRASKA GENERAL PARTNERSHIP, INTERVENOR–APPELLEE.

529 N.W.2d 764

Filed March 31, 1995.   No. S–93–446.

Edward D. Hotz and Patrick M. Flood, of Betterman, Katelman & Hotz, P.C., for appellant.

John P. Miller and Terrence J. Salerno for appellee.

Joseph C. Byam, of Byam & Byam, for intervenor–appellee.

WHITE, C.J., CAPORALE, FAHRNBRUCH, LANPHIER, WRIGHT, and CONNOLLY, JJ., and GRANT, J., Retired.

FAHRNBRUCH, J.

In this case, the trial court ordered that a fee for legal services (Kopp fee) should be divided pursuant to the formula contained in a partnership agreement of three attorneys, Warren

Schrempp, Joseph F. Gross, Jr., and Terrence Salerno.

The court also ordered that one–half of a second fee for legal services (Jones fee) should be distributed by the same formula to the former partners of Schrempp, Gross & Salerno and that the other one–half should be paid to the law firm of Byam & Byam.

The court also held that the Schrempp, Gross & Salerno partnership was dissolved when Gross left it and took the two cases with him. Gross continued to handle the two cases in question, and a settlement in each case resulted in attorney fees of $40,000 in the Kopp case and $85,705.76 in the Jones case.

Attorney Gross appealed the court's rulings.

We affirm the rulings of the district court for Douglas County.

## ASSIGNMENTS OF ERROR

Gross claims that the trial court erred in (1) denying his request for a jury trial; (2) concluding that legal files Gross continued to handle after he withdrew from the Schrempp, Gross & Salerno partnership were "work in process" pursuant to the partnership agreement; (3) concluding that the Schrempp, Gross & Salerno partnership dissolved upon the withdrawal of Gross; (4) not dissolving the partnership in accordance with the partnership agreement; (5) refusing to admit into evidence prior drafts of the partnership agreement; (6) determining that Byam & Byam was entitled to one–half of the second fee; and (7) determining that there was not a misjoinder of causes of action.

## FACTS

Omaha attorneys Schrempp, Gross, and Salerno formed a law partnership on July 8, 1986, but did not sign a partnership agreement until November 11, 1987. The partnership agreement allocated one–half of the profits and losses to Schrempp and one–fourth each to Gross and Salerno.

Sections 14 and 15 of the partnership agreement detailed the terms of dissolution and partnership withdrawal. As relevant here, Section 14 states:

> The witdrawal [sic], retirement, disability, death, expulsion or bankruptcy of any Partner where more than two Partners remain in the Partnership shall not require a

winding up of the Partnership (unless the remaining Partners vote to dissolve) and shall have no effect upon the contiuance [sic] of the Partnership's business.

Section 15.01, as relevant here, states:

Upon withdrawal from the Partnership, the withdrawing Partner shall be paid by the Partnership an amount equal to the balance as of the date of withdrawal of the withdrawing Partner's cash operating account (adjusted for Partnership profits and losses to the date of withdrawal) plus an amount equal to the unvested portion of the withdrawing Partner's share of any Partnership Pension, Profit Sharing or Keogh Plan.

The foregoing amounts shall be in full payment for all sums due and owing to the withdrawing Partner and his interest in all work in process, clients of the partnership, client files, and papers, books, and records relating to Partnership clients shall terminate.

On July 29, 1991, Schrempp and Salerno filed a declaratory judgment action asking the trial court to determine how the Jones and Kopp fees should be divided among the partners. The Kopp and Jones cases were in the Schrempp, Gross & Salerno firm when Gross left the partnership. When he left, Gross took the two files with him. He finalized the cases after he withdrew from the partnership and refused to share the fees with his two former partners or anyone else involved in the cases.

In regard to the Jones fee, Schrempp and Salerno alleged that the law firms of Byam & Byam and Schrempp, Gross & Salerno were hired by Jones to prosecute his personal injury claim on a contingency fee basis. The Byam and Schrempp firms together were to receive attorney fees amounting to one–third of all amounts recovered for Jones. The two firms agreed to split the Jones fee evenly. On July 6, 1988, Gross withdrew from the Schrempp, Gross & Salerno partnership. The two law firms representing Jones agreed that Gross should continue to work on the Jones case. On January 26, 1989, the parties in the Jones case settled. Gross, however, refused to share the resulting attorney fee of $85,705.76 with his former partners and with Byam & Byam.

In regard to the Kopp fee, Schrempp and Salerno alleged that

when Gross was a partner with them, he was assigned the Kopp file, a personal injury case which was being handled by the firm before Gross became a partner in it. Schrempp and Salerno alleged in their petition that Gross took the Kopp file with him when he left the partnership. They also alleged that by letter, Gross told them that he intended to represent the Kopp family but would distribute any attorney fees resulting from the case in accordance with the partnership agreement. In April 1990, the parties in Kopp settled, and Gross refused to share the attorney fees, amounting to $40,000, with his former partners.

Gross filed a demurrer to Schrempp and Salerno's petition, alleging that the petition was defective because it did not include Byam & Byam as a party to the action. Gross claimed, inter alia, that under Neb. Rev. Stat. § 25-323 (Reissue 1989) Byam & Byam was a "necessary party" to the determination of the controversies alleged in the Jones cause of action.

Shortly thereafter, Byam & Byam successfully petitioned to intervene in the matter due to its interest in one-half of the Jones fees.

In his answer, Gross requested a jury trial and affirmatively alleged that the Jones and Kopp files were not "work in process" under Section 15 of the partnership agreement. Gross further claimed that Byam & Byam was only entitled to a quantum meruit recovery at most. The trial court denied Gross' request for a jury trial.

The evidence adduced at the bench trial established that Jones originally retained Byam & Byam to represent him in his personal injury claim against the city of Omaha. Byam & Byam solicited the help of Schrempp, Gross & Salerno, resulting in an agreement that the two firms would evenly split the attorney fees. Gross was assigned to work on the Jones case in conjunction with attorney Joseph Byam of Byam & Byam.

In June 1988, Gross informed Byam that he planned to leave Schrempp, Gross & Salerno. Gross asked Byam what should be done about the Jones case, and Byam said, "I don't see any reason why you shouldn't continue to work on this case," to which Gross responded, "[T]hat's fine."

The following month, Gross voluntarily left Schrempp, Gross & Salerno. Gross took five or six files from the office,

including Jones and Kopp. The evidence reflects that Schrempp and Salerno disapproved of Gross' taking the Jones and Kopp files and disputed his claim to the files.

In August 1988, Gross agreed to distribute attorney fees arising from Jones and Kopp in accordance with the partnership agreement. Gross specifically stated in an August 11, 1988, letter to Schrempp and Salerno in reference to the Kopp case: "It is my intention to divide any fee 2-1-1. That is not to say that you have a 'claim' to any fee in that case." Schrempp and Salerno agreed to waive any interest in the other cases that Gross took from the office, and Gross agreed to waive any interest in cases that remained with Schrempp and Salerno.

During the trial, Gross offered early drafts of the partnership agreement to prove the intent of the parties in using the term "work in process" in Section 15 of the agreement. The trial court sustained an objection to the exhibits on the ground that Section 15 of the partnership agreement is not vague or indefinite but clearly states that the partnership has a claim for in-process cases being worked on by a withdrawing partner.

In its order, the trial court held that the Jones and Kopp cases were work in process under Section 15 of the partnership agreement. The court further held that Gross had a fiduciary obligation to complete Jones and Kopp for the partnership. Because the partnership agreement was silent as to distribution of fees when the withdrawing partner removed work in process, the trial court relied upon the Uniform Partnership Act. It ruled that the change in relationship of the partners caused a dissolution of the partnership, necessitating a winding up of the partnership affairs. The court then awarded one-half of the attorney fees in Jones to Byam & Byam and ordered that the remaining one-half of the fees be distributed according to the Schrempp, Gross & Salerno partnership agreement. The court ordered that the attorney fees in Kopp be distributed in accordance with the Schrempp, Gross & Salerno partnership agreement.

Gross filed a motion for a new trial, which was overruled. Gross appealed.

## STANDARD OF REVIEW

In an appeal from a declaratory judgment, the appellate court, regarding questions of law, has an obligation to reach its conclusion independent from the conclusion reached by the trial court. *How v. Mars*, 245 Neb. 420, 513 N.W.2d 511 (1994).

## ANALYSIS

### REQUEST FOR JURY TRIAL

Gross claims the trial court erred in refusing to grant his request for a jury trial. Gross contends that he was entitled to a jury trial because the parties disputed material facts. The case at bar, however, does not present any factual disputes.

It is undisputed that Schrempp, Gross & Salerno practiced law under a partnership agreement. Gross voluntarily withdrew from the partnership on July 6, 1988, and removed the Jones and Kopp files from the office. It is undisputed that Jones retained the law firms of Byam & Byam and Schrempp, Gross & Salerno to litigate his claim on a contingency fee basis and that all three parties signed the agreement to represent Jones.

Gross did contest the interpretations of. the partnership agreement. Such an issue, as analyzed below, is a question of law because the partnership agreement is unambiguous. See *Young v. Tate*, 232 Neb. 915, 442 N.W.2d 865 (1989). There are no material facts for a jury or judge to decide.. Therefore, the court did not err in denying Gross' request for a jury trial.

### PARTNERSHIP AGREEMENT

Gross claims that the trial court erred in concluding that under the partnership agreement the Jones and Kopp files were "work in process." Gross argues that "work in process" as used in Section 15 was not meant to apply to files which a withdrawing partner continued to handle. Gross also claims that the trial court erred in not admitting into evidence early drafts of the partnership agreement. Gross argues that had the court admitted the drafts, he could prove his assertion regarding the intent of "work in process." Because the two assignments of error are related, we will consider Gross' second and fifth assignments of error together.

A contract which is written in clear and unambiguous

language is not subject to interpretation or construction; rather, the intent of the parties must be determined from the contents of the contract, and the contract must be enforced according to its terms. *Rains v. Becton, Dickinson & Co.*, 246 Neb. 746, 523 N.W.2d 506 (1994). Section 15 of the partnership agreement states that the withdrawing partner terminates all interest "in all work in process, clients of the partnership, client files, and papers, books, and records relating to Partnership clients." The term "work in process" clearly speaks for itself and does not need the aid of extrinsic facts.

Prior negotiations and drafts of the partnership agreement, offered to interpret Section 15, are not admissible because the plain meaning of the agreement speaks for itself. Gross relies on the well-established principle in *Wilderman v. Watters*, 149 Neb. 102, 30 N.W.2d 301 (1948), that in the interpretation of a writing which is intended to state the entire agreement, preliminary negotiations between the parties may be considered in order to determine their meaning and intention, but not to vary or contradict the plain terms of the instrument. However, such extrinsic facts are allowed only when factual disputes and ambiguities exist regarding the meaning of material terms in a contract. See, *Nebraska Depository Inst. Guar. Corp. v. Stastny*, 243 Neb. 36, 497 N.W.2d 657 (1993) (prior negotiations are admissible when meaning of contract is in doubt); *Hansen v. Circle Lake Development Corp.*, 199 Neb. 678, 260 N.W.2d 609 (1977) (preliminary negotiations of the parties considered when trying to determine the meaning of ambiguous terms). Here, the terms of the partnership agreement are plain and unambiguous. The trial court correctly sustained objections to the admission of the drafts of the partnership agreement because Section 15 of the agreement unambiguously stated that a withdrawing partner terminates any interest in work in process.

Upon Gross's withdrawal, Section 15 required the partnership to pay Gross the balance of his cash operating account plus his share of any pension, profit sharing, or Keogh plan. In return, Section 15 also required that Gross terminate his interest in partnership clients and work in process. Gross, pursuant to Section 15, should have waived his interest in the

Jones and Kopp cases and allowed Schrempp and Salerno to continue representing the law firm's clients.

### DISSOLUTION OF THE PARTNERSHIP

Gross contends that the court erred in concluding that Schrempp, Gross & Salerno dissolved upon Gross' withdrawal. Section 5 of the partnership agreement states, "The term of the partnership shall be treated as commencing on July 8, 1986, and shall continue until dissolved by an act or event specified *in this Agreement or by law* as one effecting dissolution." (Emphasis supplied.) Thus, the partnership agreement provided for dissolution due to an act effecting dissolution as mandated by statute.

As already stated, Gross violated Section 15 of the agreement by taking work in process with him and by continuing to represent the clients of the partnership after his withdrawal. Section 15 of the agreement, however, is silent as to a withdrawing partner's refusing to terminate his interest in work in process. Section 14 of the partnership agreement, which provides the terms for dissolution, is also silent as to a withdrawing partner's acting in contravention of the terms for withdrawal.

Gross' violation of the partnership agreement causes a dissolution under the Uniform Partnership Act. Neb. Rev. Stat. § 67-331(2) (Reissue 1990) states that dissolution is caused "[i]n contravention of the agreement between the partners, where the circumstances do not permit a dissolution under any other provision of this section, by the express will of any partner at any time."

Because Gross acted in direct contravention of Section 15 of the partnership agreement, he caused a dissolution of the partnership. The action of Gross meets the statutory definition of dissolution because he changed the relation of the partners by ceasing to be associated in the carrying on of the business. See Neb. Rev. Stat. § 67-329 (Reissue 1990). The trial court did not err in holding that the partnership dissolved upon Gross' withdrawal.

### PARTNERSHIP DISSOLUTION

Gross claims that the trial court erred by not dissolving the

partnership in accordance with the partnership agreement. Schrempp and Salerno respond to Gross' claim by relying upon *Frates v. Nichols*, 167 So. 2d 77 (Fla. App. 1964). In *Frates*, a partner voluntarily left a law firm and took with him 10 negligence cases. Eight of these cases resulted in fees. Similar to Schrempp, Gross & Salerno's agreement, the partnership agreement in *Frates* stated that a withdrawing partner receives the balance of his individual capital account, but waives any interest in " 'the partnership, its accounts, its cases then in process, or any business or fees thereafter received.' " *Id.* at 81 n. 11.

The Florida appellate court applied common–law principles because the partnership agreement was silent as to a withdrawing partner's taking work in process. In addressing whether the fees generated from files taken by Frates should be distributed to the partnership, the court held that "a law partner in dissolution owes a duty to his old firm to wind up the old firm's pending business, and that he is not entitled to any extra compensation therefor." *Id.* at 80. We agree with the analysis of the Florida court. The agreement between Schrempp, Gross, and Salerno did not expressly contemplate the present dispute. Thus, we look to the Uniform Partnership Act and common–law principles to determine if the partnership should wind up its affairs in light of Gross' violation of the agreement.

In *Smith v. Daub*, 219 Neb. 698, 365 N.W.2d 816 (1985), the law partnership of Daub, Stehlik & Smith dissolved. On appeal, we addressed whether Smith was entitled to compensation at some rate other than that which existed during the term of the partnership for work he performed following the dissolution. We held:

> Both under the provisions of the Uniform Partnership Act and the Code of Professional Responsibility, the partnership of Daub, Stehlik, and Smith was obligated to complete the work for the clients or afford the clients an opportunity to seek other counsel. Until the work was either completed or the partnership discharged from any further responsibility in connection with the work, the partnership could not be terminated. A partnership only terminates when the business of the partnership has been

wound up. [Citation omitted.] Therefore, whatever rules apply with regard to distribution before the partnership is dissolved apply after it is dissolved but before it is terminated by winding up the affairs of the partnership.

*Smith v. Daub*, 219 Neb. at 704, 365 N.W.2d at 820–21. Similarly, the obligation to represent Jones and Kopp remained with Schrempp, Gross & Salerno.

We adopt the reasoning in *Rosenfeld, Meyer & Susman v. Cohen*, 146 Cal. App. 3d 200, 194 Cal. Rptr. 180 (1983), that as a partner, Gross had a continuing fiduciary duty to Schrempp, Gross & Salerno that prohibits a partner of a dissolved partnership from entering into contracts for personal gain in connection with unfinished business of the partnership. Absent a contrary agreement, any income generated through the winding up of unfinished business of a partnership is allocated to the former partners according to their respective interests in the partnership. See, *Kirsch v. Leventhal*, 181 A.D.2d 222, 586 N.Y.S.2d 330 (1992); *Sullivan, Bodney & Hammond, P.C. v. Bodney*, 16 Kan. App. 2d 208, 820 P.2d 1248 (1991); *Jewel v. Boxer*, 156 Cal. App. 3d 171, 203 Cal. Rptr. 13 (1984); *Resnick v. Kaplan*, 49 Md. App. 499, 434 A.2d 582 (1981).

The California Court of Appeals in *Jewel v. Boxer* articulated the policy concerns behind distributing the fees in accordance with the terms of the partnership agreement:

> There are sound policy reasons for applying the rule against extra compensation to law partnerships. The rule prevents partners from competing for the most remunerative cases during the life of the partnership in anticipation that they might retain those cases should the partnership dissolve. It also discourages former partners from scrambling to take physical possession of files and seeking personal gain by soliciting a firm's existing clients upon dissolution.

*Jewel v. Boxer*, 156 Cal. App. 3d at 179, 203 Cal. Rptr. at 18.

Jones and Kopp retained the firm of Schrempp, Gross & Salerno to represent their interests. Gross, as a member of the firm, handled the Jones and Kopp files. Gross' fiduciary duty to the firm remained when he withdrew from the firm but continued to handle the Jones and Kopp cases. Gross' actions

dissolved the firm, and the fees from Jones and Kopp are part of the winding up of firm assets. It appears that except for Byam & Byam's claim for its share of the Jones fee, the parties have raised no other issues than those discussed. Therefore, to finally wind up the Schrempp, Gross & Salerno partnership all that is necessary is the distribution of fees earned from the Jones and Kopp cases in accordance with the partnership agreement.

## INTERVENOR'S INTEREST

Gross contends that Byam & Byam is not entitled to one–half of the Jones fee. It is undisputed that Jones retained both Byam & Byam and Schrempp, Gross & Salerno to represent him and that the two law firms orally agreed to split fees in the Jones case. Even absent an agreement to split fees, as asserted by Gross, the court was correct in awarding one–half of the fees to Byam & Byam. When several attorneys engage in the prosecution of litigation for a contingent fee, in the absence of any other agreement, they will be held, upon the successful result of the suit, to share equally in the distribution of the fee. See *Langdon v. Kennedy, Holland, DeLacy & McLaughlin*, 118 Neb. 290, 224 N.W. 292 (1929).

## JOINDER OF PARTIES

Lastly, Gross assigns that the court erred in concluding that there was no misjoinder of causes of action. This argument is without merit. On August 29, 1991, Gross filed a demurrer in the district court claiming the petition was defective because Byam & Byam, "a necessary party," was not a party to the Jones cause of action. On September 10, Byam & Byam filed a motion to intervene because of its interest in the Jones cause of action.

Gross cannot claim prior to trial that Byam & Byam must be a party to the Jones cause of action and after the trial appeal on the ground that Byam & Byam was granted the right to intervene in the Jones cause of action. A party cannot complain of error which he has invited the court to commit. *Norwest Bank Neb. v. Bowers*, 246 Neb. 83, 516 N.W.2d 623 (1994).

In any event, Byam & Byam had a direct and immediate interest, in that it would either lose or gain by the direct application of the judgment. See *Bowman v. City of York*, 240

Neb. 201, 482 N.W.2d 537 (1992). Thus, Byam & Byam could intervene as a matter of right. See *Geer–Melkus Constr. Co., Inc. v. Hall County Museum Board*, 186 Neb. 615, 185 N.W.2d 671 (1971).

## CONCLUSION

The trial court correctly held that Gross dissolved the partnership when, upon withdrawal, he took files which were "work in process." As part of the winding up of the Schrempp, Gross & Salerno partnership, the former partners should distribute attorney fees from Jones and Kopp in accordance with the partnership percentages in the partnership agreement. The trial court correctly held that Byam & Byam has an interest in one–half of the attorney fees from the Jones settlement.

AFFIRMED.