JOHNSON LAKES DEVELOPMENT, INCORPORATED, APPELLEE, V.
CENTRAL NEBRASKA PUBLIC POWER & IRRIGATION DISTRICT,
A POLITICAL SUBDIVISION AND PUBLIC CORPORATION OF NEBRASKA,
APPELLANT.
R. DANIEL NIEMOTH AND LOIS M. NIEMOTH, INDIVIDUALLY AND
ON BEHALF OF ALL PERSONS SIMILARLY SITUATED, APPELLEES AND
CROSS-APPELLANTS, V. CENTRAL NEBRASKA PUBLIC POWER &
IRRIGATION DISTRICT, A POLITICAL SUBDIVISION AND PUBLIC
CORPORATION OF NEBRASKA, APPELLANT AND CROSS-APPELLEE.
568 N.W.2d 573

Filed August 26, 1997. Nos. A-95-1380, A-95-1388.

Michael C. Klein and Robert J. McCormick, of Anderson, Klein, Peterson, Swan & Bogle Louthan, for appellant.

Patrick W. Healey, of Healey & Wieland Law Firm, and E. Bruce Smith for appellees.

HANNON, MUES, and INBODY, Judges.

HANNON, Judge.

The two appeals covered by this opinion concern a lease of the land surrounding Johnson Lake in Gosper and Dawson Counties. Central Nebraska Public Power & Irrigation District (Central) owns the land and is the defendant and the appellant in both cases. Johnson Lakes Development, Incorporated (JLDI), the lessee, is the plaintiff in case No. A-95-1380, and R. Daniel Niemoth, Lois M. Niemoth, and all persons similarly situated are the plaintiffs in case No. A-95-1388. The Niemoths and the persons they claim to be representing (collectively "the Niemoths") separately subleased various parcels of the land from JLDI. The plaintiffs in both actions sought the same relief

against Central, and Central, JLDI, and the Niemoths separately moved for summary judgment. The trial court granted JLDI's motion, denied Central's motion, and dismissed the Niemoths' action on the ground that it was moot.

The controlling issues in these appeals are (1) whether a provision calling for termination of the lease upon the nonrenewal of Central's Federal Energy Regulatory Commission (FERC) license was effective because the license was renewed for only 1 year at a time rather than an additional 50 years and (2) whether Central can unilaterally terminate the lease under a provision in the lease giving Central "complete power and authority to cancel or terminate" the lease "at any time it so desires by giving JLDI written notice of such intentions at least six (6) months in advance." We conclude that (1) the issuance of the FERC license for 1 year constituted a renewal and did not effect the termination of the lease and further that Central waived the possible termination by failing to rely upon it for more than 7 years and (2) Central can terminate the lease if it strictly complies with the terms of the lease. We therefore reverse the district court's granting of summary judgment to JLDI in case No. A-95-1380 and partially grant Central's motion for summary judgment. We also reverse the district court's dismissal as moot of case No. A-95-1388.

## I. SUMMARY OF EVIDENCE

For many years, JLDI has leased the real estate surrounding Johnson Lake from Central. The Niemoths and others have subleased parcels of said real estate and developed the same. On May 1, 1978, Central and JLDI entered into a lease for real estate surrounding Johnson Lake, and it is the construction of that lease that is determinative of the instant action. The lease is five single-spaced pages in length and has many detailed provisions. Those pertinent to the issues of this case are as follows:

> WHEREAS, the DISTRICT [Central] desires to provide a new Agreement for a thirty-one (31) year term with automatic renewal extension at the end of the first year and each successive year, resulting in a thirty-one (31) year maximum and a thirty (30) year minimum Agreement . . . [.]
>
> . . . .

NOW THEREFORE, in consideration of the mutual covenants, promises and agreements herein contained, the parties do hereby covenant, promise and agree as follows:

(1) The DISTRICT does hereby lease to JLDI for a period of thirty-one (31) years from this date . . . .

(2) Said thirty-one (31) year period shall take effect on the date of this Agreement and shall include an automatic renewal period of one (1) year. This renewal period shall take effect at the end of the first year and at the end of each successive year in which the Agreement is in existence, resulting in a thirty-one (31) year maximum term and a thirty (30) year minimum term. Any and all leasing or sub-leasing done by JLDI under this Agreement shall not extend beyond the terms or period of this Agreement.

(3) Within one (1) year from the effective date of this Agreement, JLDI and all sub-lessees shall enter into new agreements based on the thirty/thirty-one (30/31) year period . . . .

. . . .

(31) It is understood and agreed by the parties to this Agreement that the powers of the DISTRICT are under limitation and restriction by reason of the Federal Energy Regulatory Commission (formerly Federal Power Commission) license dated July 30, 1937, and expiring fifty (50) years thereafter with the rights as thereon granted and agreed to, and in the event said FERC license is not renewed, that upon the expiration of such license this Agreement shall deliver full and complete possession of all leased areas to the DISTRICT by JLDI.

. . . .

(33) *The DISTRICT shall have complete power and authority to cancel or terminate this Agreement at any time it so desires by giving JLDI written notice of such intentions at least six (6) months in advance* addressed to JLDI at its last known corporate address. Upon such cancellation or termination of this Agreement between DISTRICT and JLDI, all permanent improvements . . . and other property of a permanent nature which has been placed on DISTRICT property and lands by JLDI, sublessees or by any-

one holding by, through or under JLDI, except buildings, shall immediately become the property of the DISTRICT and all buildings thereon not removed within thirty (30) days following the termination of this Agreement shall become the property of the DISTRICT. . . .

. . . .

(35) . . . *This Agreement cannot be changed, modified, abrogated or annulled, except that the same be in writing and signed by the parties* hereto, after the officers of the DISTRICT are authorized to do so by the Board of Directors of the DISTRICT.

(Emphasis supplied.) While the lease did not provide for rent, there was consideration consisting of mutual promises and covenants.

On March 4, 1994, Central's board of directors passed resolution No. 94-2, authorizing and instructing Central's president and secretary to enter into a modification agreement with JLDI (as well as with other lake associations) "to provide, among other things, for the payment of fair and reasonable rent for the personal benefit received from the use of" Central's property. The resolution gave JLDI until June 1 to enter into a modification agreement with Central. If JLDI failed to do so, Central's officers were authorized to begin the process of canceling or terminating any agreement with JLDI. Central subsequently passed resolution No. 94-5, extending the negotiating period until July 15. JLDI has refused to sign any modification agreement.

On July 22, 1994, JLDI filed this action against Central. The Niemoths filed a similar petition. In summary, both JLDI and the Niemoths allege that Central is attempting to unilaterally modify the terms and conditions of the lease in a manner favorable to Central and unfavorable to JLDI and the Niemoths and that such attempt constitutes an unlawful taking of property. Both JLDI and the Niemoths allege that because they relied on the continuation of the established arrangement with Central and thereby made substantial investments, Central was "barred by equitable estoppel and laches from disrupting, altering and changing the lot fees." JLDI and the Niemoths further allege that there is no adequate remedy at law and that they will suffer irreparable harm unless Central is enjoined from modifying the

lease unilaterally. JLDI and the Niemoths pray for a temporary and permanent injunction barring Central from enforcing or attempting to enforce resolution No. 94-2 or from taking "any other action without mutual consent under the same or in any other way violating" their rights, benefits, and enjoyment.

We note that JLDI also alleges that it has leased the land for approximately 50 years, that it has subleased various parcels of the land to the Niemoths, that it and its sublessees have maintained the shoreline, and that "in reliance on the status quo and representations made by CENTRAL," JLDI and the Niemoths have made substantial and valuable improvements on the lands. These allegations were stricken by the court on Central's motion. However, they are contained in the Niemoths' petition.

In its answers, Central admits that the lease has been executed, disagrees with JLDI's and the Niemoths' interpretation of the lease, and denies any attempt on its own part to unilaterally modify the terms and conditions of the lease. Central further admits that it adopted resolution No. 94-2, which authorized its officers to enter into negotiations with JLDI to modify the lease to provide for rent and which further authorized the officers to cancel the lease if a modification agreement had not been entered into by June 1, 1994.

Central also filed cross-petitions, seeking a declaration of its rights and duties under the lease. Specifically, Central alleges that the lease was "not now in full force and effect and has not been in full force and effect since July 30, 1987," pursuant to paragraph 31 of the lease because the FERC had not "renewed" Central's 50-year license. In its prayers, Central claims that this event "delivered full and complete possession of all leased areas to Central by JLDI on July 30, 1987." There is, however, no evidence in the record to support Central's argument that it regained possession. We interpret Central's argument as meaning that the FERC's failure to "renew" the license resulted in the termination or cancellation of the lease. In the alternative, Central alleges that even if the lease was in "full force and effect," it could cancel or terminate the lease pursuant to paragraph 33. Central asked the court (1) to determine the rights and the duties of the parties under the lease and (2) if it found that the lease had not already been terminated by the nonrenewal of

the FERC license, to determine that Central has complete authority to terminate the lease under paragraph 33.

In its reply, JLDI alleged that Central is still a licensee of the FERC and that Central is barred and estopped from claiming that it is not operating under such a license.

Central, JLDI, and the Niemoths each moved for summary judgment. In the JLDI case, the trial court determined that the clear import of paragraph 31 was that Central would be unable to continue the lease agreement if it was not licensed to operate the reservoir, and thus the lease would terminate. However, the court found that Central continues to operate the reservoir under the renewable 1-year license. The court also determined that there was an ambiguity between paragraph 33 and paragraphs 1, 2, and 35, which required paragraph 33 to be read conditionally. The court found that Central was not entitled to unilaterally terminate the lease under paragraph 33 unless the termination was "directly related to the physical operation of the lake in its system of lakes and canals created to provide irrigation and hydroelectric services" and that the lease could be altered only with the consent of both parties in writing as provided in paragraph 35. The court thus granted JLDI's motion for summary judgment and enjoined Central from enforcing the provisions of resolution No. 94-2 or the proposed modification agreement; from interfering with the rights, benefits, and enjoyments of JLDI and its sublessees under the lease; and from unilaterally altering such agreement or providing for rents or application of rents. The court also denied Central's motion for summary judgment.

In a separate order entered in the Niemoth case, the court found that the Niemoths' suit was moot and dismissed it for that reason.

## II. ASSIGNMENTS OF ERROR AND ISSUES

In case No. A-95-1380, Central alleges that the trial court erred in sustaining JLDI's motion for summary judgment and in overruling Central's motion for summary judgment. In case No. A-95-1388, Central alleges that the trial court erred in dismissing its cross-petition as moot. The Niemoths cross-appealed, asking, in the event the court finds that summary judgment should not have been granted in favor of JLDI, that the cause be remanded for further proceedings.

■ Although the denial of a motion for summary judgment is not a final order and thus may not be appealed, when adverse parties have each moved for summary judgment and the trial court sustained one of the motions, the reviewing court obtains jurisdiction over both of the motions, may determine the controversy which is the subject of those motions, and may make an order specifying the facts which appear without substantial controversy and directing such further proceedings as it deems just. *Baker's Supermarkets v. Feldman*, 243 Neb. 684, 502 N.W.2d 428 (1993); *Nu-Dwarf Farms v. Stratbucker Farms*, 238 Neb. 395, 470 N.W.2d 772 (1991). As stated above, Central seeks to have this court grant its motion for summary judgment against JLDI and overrule those of JLDI and the Niemoths.

As usual, the assignments of error upon appeal from the granting of a motion for summary judgment do not frame the issues raised by the appeal. Specifically, the issues are whether the lease is ambiguous, whether the provision for termination is valid, and whether the lease has been terminated. Whether summary judgment should have been granted to any of the parties is determined by the resolution of these issues.

## III. STANDARD OF REVIEW

■ Summary judgment is proper only when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Moulton v. Board of Zoning Appeals*, 251 Neb. 95, 555 N.W.2d 39 (1996); *Polinski v. Omaha Pub. Power Dist.*, 251 Neb. 14, 554 N.W.2d 636 (1996). In reviewing a summary judgment, an appellate court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Moulton v. Board of Zoning Appeals, supra; Polinski v. Omaha Pub. Power Dist., supra.*

■ In an appeal from a declaratory judgment, an appellate court has an obligation to reach a conclusion regarding questions of law independent from the conclusion reached by the trial court. *Schrempp and Salerno v. Gross*, 247 Neb. 685, 529 N.W.2d 764 (1995).

## IV. ANALYSIS

Central alternatively maintains (1) that the lease has already been terminated under paragraph 31 because its FERC license was not renewed on July 30, 1987, or (2) that if the lease was not terminated under paragraph 31, Central has the authority to terminate the lease under paragraph 33. The trial court determined that Central could terminate the lease under paragraph 33 only if the termination related directly to the physical operation of the lake in its system of lakes and canals.

As a preliminary matter, we observe that JLDI alleges that Central was seeking to make a unilateral modification of the terms of the lease. While Central, in its pleadings, denies that it was attempting to make such a change, it alleges in substance that if JLDI did not agree to a modification, it would cancel the lease pursuant to paragraph 33. The documents in evidence show that Central was not attempting to make a unilateral modification of the lease but, rather, was threatening to cancel the lease according to paragraph 33 if JLDI did not agree to the modification of the terms of the lease.

### 1. EFFECT OF NONRENEWAL OF CENTRAL'S FERC LICENSE

Central argues that because the FERC did not "renew" its FERC license on July 30, 1987, the lease terminated under paragraph 31, which provides:

> It is understood and agreed by the parties to this Agreement that the powers of the DISTRICT are under limitation and restriction by reason of the Federal Energy Regulatory Commission (formerly Federal Power Commission) license dated July 30, 1937, and expiring fifty (50) years thereafter with the rights as thereon granted and agreed to, and in the event said FERC license is not renewed, that upon the expiration of such license this Agreement shall deliver full and complete possession of all leased areas to the DISTRICT by JLDI.

Central contends that the annual license issued by the FERC, effective July 30, 1987, as distinguished from a new (presumably 50-year) license, resulted in the termination of the lease. As pointed out by Central, the term "renew" means " 'to grant or obtain an extension of: continue in force for a fresh period.' " *Pump & Pantry, Inc. v. City of Grand Island*, 233 Neb. 191, 196,

444 N.W.2d 312, 316 (1989). Accord Webster's Third New International Dictionary, Unabridged 1922 (1993). We note that this definition does not necessarily include an extension for the same period of time as the original license—just a " 'fresh period.' " By issuing an annual license, the FERC essentially gave Central a 1-year extension in which its license was to continue in force. The FERC's Notice of Issuance of Annual License, dated June 30, 1987, states, in relevant part:

> The license for Project No. 1417 was issued effective July 30, 1937, for a period ending July 29, 1987. In order to authorize the continued operation and maintenance of the project pending Commission action on licensee's application, it is appropriate and in the public interest to issue an annual license to The Central Nebraska Public Power and Irrigation District.

We, therefore, conclude that the issuance of the annual license constituted a renewal of Central's FERC license. Thus, Central's argument lacks merit.

Paragraph 31 provides that if the FERC license is not renewed, then full and complete possession of the land shall be delivered to Central. This provision can be interpreted only as meaning that the lease shall be terminated upon the nonrenewal of the FERC license. Central's 50-year FERC license expired July 30, 1987, and the evidence shows that it has since been operating under automatic 1-year extensions of that license. Therefore, if the lease was terminated pursuant to paragraph 31, then it had to have been terminated on July 30, 1987. JLDI alleges that Central is barred and estopped from claiming that it is not now operating as a lawfully licensed entity. The evidence is clear that Central never claimed termination of the lease or forfeiture of JLDI's rights under the lease by reason of the happening of the event which Central now claims delivered possession of the leased land to it. Since Central clearly remained silent for 7 years after the happening of this event, it has waived its right to now claim termination or forfeiture. We believe the rule to be as follows:

> A voluntary abandonment or relinquishment by a landlord of a known right or advantage in relation to the lease is a waiver of the right to object to some particular conduct of the part of the lessee.

The existence of a waiver of the right to terminate a lease is a question of fact for determination by the fact-finder. As a general rule, any act of a landlord that affirms the existence of the lease and recognizes the tenant as the lessee, after the landlord has knowledge of a breach of the lease which would constitute cause to terminate the lease, results in a waiver by the landlord of the right to declare a forfeiture of the lease.

Likewise, a landlord may be estopped from claiming a forfeiture of the lease by consideration of the past conduct of the landlord. Thus, a landlord will be estopped from abandoning a long-standing custom and strictly and literally enforcing the terms of the lease . . . where the landlord has long had knowledge of a breach of the lease, but has tolerated the tenant's conduct without protest, such that the tenant has come to rely upon the landlord's custom.

49 Am. Jur. 2d *Landlord and Tenant* § 325 at 293 (1995).

In this case, more than 7 years elapsed between the alleged termination and Central's effort to enforce that termination, during which time Central took absolutely no actions to recover possession of the leased premises from JLDI or its sublessees. Central's attempt to have the lease now declared terminated under paragraph 31 is merely a last-minute effort to accomplish something that it had 7 years to do. We conclude that even if the lease could have been terminated or JLDI's rights forfeited by the expiration of the 50-year lease, a matter which we do not decide, Central has clearly waived that right.

## 2. CENTRAL'S RIGHT TO TERMINATE

The trial court based its decision upon its interpretation of the lease. It concluded there was an ambiguity between paragraph 33 on the one hand and paragraphs 1 and 2, which provide for the term of the lease, and paragraph 35, which provides that the lease cannot be annulled or abrogated except in writing signed by both parties, on the other. In order to reconcile this ambiguity, the trial court concluded that paragraph 33 must be read conditionally so that Central can terminate under paragraph 33 only if the termination is directly related to its physical operation of the lake in its system of lakes and canals.

Notably, the court failed to specify the reasoning used to arrive at the insertion of the condition as a method of removing the supposed ambiguity.

■ A lease agreement is to be construed as any other contract. *Bedrosky v. Hiner*, 230 Neb. 200, 430 N.W.2d 535 (1988). In construing contracts, a court as a matter of law must first determine whether the contract is ambiguous. *Murphy v. City of Lincoln*, 245 Neb. 707, 515 N.W.2d 413 (1994). A contract which is written in clear and unambiguous language is not subject to interpretation or construction; rather, the intent of the parties must be determined from the contents of the contract, and the contract must be enforced according to its terms. *Schrempp and Salerno v. Gross*, 247 Neb. 685, 529 N.W.2d 764 (1995); *Label Concepts v. Westendorf Plastics*, 247 Neb. 560, 528 N.W.2d 335 (1995).

■ Construction of a contract is a matter of law, in connection with which an appellate court has an obligation to reach an independent, correct conclusion irrespective of determinations made by the court below. *Larsen v. First Bank*, 245 Neb. 950, 515 N.W.2d 804 (1994); *Baker's Supermarkets v. Feldman*, 243 Neb. 684, 502 N.W.2d 428 (1993).

### (a) Lease Was Not Ambiguous

■ The trial court concluded that paragraph 33 makes the lease a tenancy at will, which conflicts with a lease for a term of years. We do not agree. A lease which may be terminated at any time at the will of either party is a tenancy at will. *Day v. Kolar*, 216 Neb. 47, 48, 341 N.W.2d 598, 599 (1983) (cancellation clause in lease permitting either party to terminate the lease " 'upon -0- days notice in writing' " made lease a tenancy at will). In the instant case, the lease is clearly not a tenancy at will because, at the very least, the tenant has the right to continue in possession for 6 months following notice of termination.

In its brief, JLDI argues that paragraph 33 can be used by Central to cancel the lease only if the parties sign an agreement as provided in paragraph 35. Essentially, JLDI's interpretation would allow paragraph 35 to supersede paragraph 33. JLDI uses similar logic when it argues that paragraph 33 has the limited effect of allowing Central to cancel the lease only at the end of the 30-year minimum term.

An unambiguous contract is not subject to interpretation or construction, and in such a contract the intention of the parties must be determined from its contents alone. *T.V. Transmission v. City of Lincoln*, 220 Neb. 887, 374 N.W.2d 49 (1985). A contract must be construed as a whole, and if possible, effect must be given to every part thereof. *C.S.B. Co. v. Isham*, 249 Neb. 66, 541 N.W.2d 392 (1996); *Baker's Supermarkets v. Feldman, supra.*

In our view, paragraphs 33 and 35 must be read with the general provisions of Nebraska law in mind. In Nebraska, the terms of a written executory contract may be changed by a subsequent parol agreement prior to any breach of such contract. *Atokad Ag. & Racing v. Governors of Knts. of Ak-Sar-Ben*, 237 Neb. 317, 466 N.W.2d 73 (1991), *overruled on other grounds, Eccleston v. Chait*, 241 Neb. 961, 492 N.W.2d 860 (1992). Because the parol evidence rule does not affect in any way subsequent oral discharges or variations of a writing, careful and experienced drafters attempt by express terms to create protection for the drafted document. 6 Arthur L. Corbin, *Corbin on Contracts* § 1295 (1962). The second sentence of paragraph 35 has the clear purpose of preventing claims that the lease was changed in some fashion by parol agreement.

The words "abrogate" and "annul," as used in paragraph 35, are synonymous with "rescission." See, *Hoeft v. Five Points Bank*, 248 Neb. 772, 539 N.W.2d 637 (1995); Black's Law Dictionary 1306 (6th ed. 1990). Rescission entails the annulling, abrogation, or unmaking of a contract and the placing of the parties to it in status quo. *Wilson v. Misko*, 244 Neb. 526, 508 N.W.2d 238 (1993). The remedy of rescission involves more than cancellation of a contract and includes judicial effort to place contractual parties in, as nearly as possible, substantially the same condition which existed when the contract was entered into. *Kracl v. Loseke*, 236 Neb. 290, 461 N.W.2d 67 (1990). In other words, rescission implies extinction of a contract, which leaves the parties without a right of recovery on the contract itself. *Hoeft v. Five Points Bank, supra.* "A 'rescission' amounts to the unmaking of a contract, or an undoing of it from the beginning, and not merely a termination . . . ." Black's Law Dictionary, *supra* at 1306.

 With respect to a lease or contract, "termination" refers to an ending, usually before the end of the anticipated term of the lease or contract. *Id.* at 1471. For the purposes of the issues in this case, a proviso that the lease may not be "changed, modified, abrogated or annulled" does not conflict with one providing authority to "cancel or terminate."

Furthermore, a provision for termination does not conflict with a lease for a term of years. In fact, only tenancies at will, where by the very nature of the tenancy either party can terminate at any time, see, e.g., *Day v. Kolar, supra,* need not expressly create termination provisions. The real question is whether a lease for a term of years may contain a provision allowing one party to terminate the lease.

### (b) Termination Provision Is Valid

Paragraph 33 of the lease authorizes Central to unilaterally terminate the agreement upon 6 months' notice while paragraph 35 allows either Central or JLDI to modify or rescind the lease upon obtaining the other party's written approval.

> When a contract is entered into, a power of termination may be expressly reserved to either party or to each of them. . . . If the specified method of exercising the power is by giving written notice, the party sending it has the burden of proving that it was received unless it is clearly specified otherwise. . . .
>
> . . . .
>
> If a party who has a power of termination by notice fails to give the notice in the form and at the time required by his reservation, it is ineffective as a termination. . . .
>
> The time and manner of exercising a power of termination may be specified in the contract; in such case an attempt to exercise it otherwise will be ineffective. . . .
>
> The reservation of such a power to terminate does not invalidate the contract or render the consideration for a promise insufficient, so long as the party reserving the power to terminate is irrevocably bound for any appreciable period of time or has materially changed any of his legal relations or otherwise rendered some performance capable of operating as a consideration. If a period of notice is

required, the contract remains in force and must continue to be performed according to its terms during the specified period after receipt of the notice of termination. . . .

The exercise of a reserved power of termination will usually have prospective operation only; it will discharge both parties from their contractual duty to perform promises that are still wholly executory, but will not discharge the duty to make reparation for breaches that have already occurred. The extent of a reserved power, however, is determined wholly by interpretation of the terms of the contract. It may be extremely limited or very broad in its coverage.

6 Corbin, *supra*, § 1266 at 54-67.

We believe the quote from Corbin correctly summarizes the applicable law and supports our conclusion that the lease is not ambiguous.

Additionally, the validity of a unilateral termination clause has been upheld by the Nebraska Supreme Court in *Morrissey v. Broomal*, 37 Neb. 766, 56 N.W. 383 (1893). In *Morrissey*, the contract in question provided: " 'This contract shall be terminated on the first day of March, 1890, Wanzer & Co. reserving the right to terminate the same by giving thirty days' written notice . . . .' " *Id.* at 774, 56 N.W. at 384. On November 18, 1889, Wanzer & Co. notified J.C. Morrissey in writing of its election to terminate the contract, and on December 20, Wanzer & Co. terminated the contract. The court held:

When the right to terminate a contract on notice is reserved without any fraud or mistake, but with the actual knowledge and consent of all parties to the agreement, it is as valid in law as any other clause of the instrument; and the courts, when called upon, will enforce it, unless to do so would be manifestly contrary to equity and good conscience.

*Id.* at 780, 56 N.W. at 386. The court reasoned that any losses suffered by the nonterminating party in consequence of the termination were such that must have been known by him upon the signing of the contract. Thus, we conclude that the May 1, 1978, lease is valid and that the termination provision in paragraph 33 is valid.

JLDI additionally asserts that the practical interpretation of the parties is significant in interpreting a lease. Specifically,

JLDI contends that the practical interpretation has been that the sublessees have been induced to maintain the lake and make substantial investments, relying on the status quo. JLDI does not state specifically what meaning the so-called interpretation would supply, but asserts it prevents Central from canceling the lease pursuant to paragraph 33:

> Central simply may not, as it seeks to do, disregard the rolling 30+ year term established by the lease in clear terms, and purport to terminate the lease unilaterally on a mere 6 months notice, in the face of the reliance of cabin owners and their work and expenditure preserving the lake and its shoreline to Central's advantage.

Brief for appellee JLDI at 17. However, we note that JLDI's allegations in its petition concerning improvements were stricken. While JLDI did raise the issues of equitable estoppel and laches, it did not allege facts sufficient to support such legal theories, as required by Neb. Rev. Stat. § 25-804 (Reissue 1995). Moreover, any rights that JLDI or its sublessees might have acquired by improving the property is obviously not an issue that can be disposed of on a motion for summary judgment. Thus, we will not discuss these issues.

### 3. PARTIAL SUMMARY JUDGMENT FOR CENTRAL

Central does not maintain that it canceled the lease under paragraph 33 but, instead, prays for a determination that it has the right to cancel the lease under the terms of that paragraph. As discussed above, Central does have the right to cancel the lease under paragraph 33. We, therefore, conclude that the trial court should have granted partial summary judgment to Central on this issue. Additionally, Central has not and does not maintain that it has canceled the lease under this paragraph. As stated above, we need not consider whether JLDI or the Niemoths have some rights due to the estoppel and laches which they pled. However, such issues cannot arise until, at the earliest, Central in fact terminates the lease under paragraph 33.

### 4. NIEMOTHS' ACTION, CASE NO. A-95-1388

Finally, we conclude that the Niemoths' rights are no greater than JLDI's. A sublessee can in no event have greater rights against the original lessor than were given by the original

lessor to the original lessee. See *Occidental S. & L. v. Bell Fed. Credit Union*, 218 Neb. 519, 357 N.W.2d 198 (1984) (lessee/ sublessor liable to sublessee for damages where it undertook to grant options that it could not necessarily deliver under its lease with original lessor). The Niemoths' action is not moot, and their rights should be controlled by the results in case No. A-95-1380. Consequently, the trial court should enter a decree in case No. A-95-1388 that is consistent with this court's decision in case No. A-95-1380.

## V. CONCLUSION

As stated above, these actions come before us upon the parties' respective motions for summary judgment. Having concluded that the lease is unambiguous and that it allows Central to unilaterally terminate, we now reverse the trial court's order granting summary judgment in favor of JLDI. Specifically, we reverse that portion of the trial court's order of November 28, 1995, that determined that (1) the lease is ambiguous, (2) Central may not terminate the lease under paragraph 33 for any reason unless it relates to its physical operation of the lake, and (3) Central cannot take action to enforce resolution No. 94-2, or some other, similar resolution. The injunction of December 15, 1995, is also reversed, and terminated.

By its cross-petition, Central prayed that the court determine either (1) that the expiration and subsequent issuance of an annual license by the FERC in 1987 operated to deliver full and complete possession of the leased areas to Central on the date of expiration or (2) that pursuant to paragraph 33, it had the unilateral authority to terminate the lease upon 6 months' written notice. We conclude that the renewal of the FERC license did not terminate the lease. However, we further conclude that the provision for termination in paragraph 33 is valid and that Central is, therefore, entitled to partial summary judgment.

JLDI and the Niemoths both argue that the substantial improvements that they made to the demised premises somehow prevent Central from exercising its contractual right of termination. Given the state of the record before us we cannot consider the effect, if any, of the improvements made by JLDI and the Niemoths, nor can we consider any rights that they may have to protect their investment.

In case No. A-95-1388, the trial court's order dismissing the action as moot is reversed, and the court is directed to enter a decree denying and granting the parties relief in accordance with this opinion.

JUDGMENT IN NO. A-95-1380 AFFIRMED IN PART, AND IN PART REVERSED WITH DIRECTIONS.

JUDGMENT IN NO. A-95-1388 REVERSED WITH DIRECTIONS.